WEIL v. COMMISSIONER OF INTERNAL REVENUE (two cases).

Nos. 3, 4, Dockets 20328, 20329.
United States Court of Appeals
Second Circuit.

April 6, 1949.

Grain Corp. v. Commissioner, 10 Cir., 1934, 74 F.2d 453, 454; and Friedman v. Delaney, 1 Cir., 1948, 171 F.2d 269, 271.

L. HAND, Chief Judge, dissenting.

———◆———

Benjamin Booth, of New York City (Alexander A. Mayper and David Lazarus, both of New York City, of counsel), for petitioners.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and I. Henry Kutz, Sp. Asst. to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and A. F. Prescott, Sp. Asst. to the Atty. Gen., for respondent.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

These petitioners seek reversal of decisions determining deficiencies in their respective income taxes for the years 1939 and 1941. In the case of Benjamin J. Weil the deficiencies are $463.07 for 1939 and $3443.78 for 1941; in the case of his brother, L. Victor Weil, they are $2542.99 for 1939 and $3890.44 for 1941. Each case presents the same legal question, namely, whether payments actually received by the taxpayer in the years in suit should be treated as constructively received in earlier years in which he reported as income the amounts now in dispute.

Section 42 of the Internal Revenue Code, 26 U.S.C.A. § 42, lays down the general rule for reporting income, as follows:

"The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period."

Although the statute says nothing as to constructive receipt of income this doctrine has from the beginning been incorporated in the Treasury Regulations. Section 19.-42-2 of Treasury Regulations 103, applicable to the years in suit, reads as follows:[1]

"Sec. 19.42-2. Income not reduced to possession.—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt."

The doctrine of constructive receipt treats as taxable any income which is unqualifiedly subject to the demand of a taxpayer on the cash receipts and disbursements method of accounting, whether or not such income has actually been received in cash. Ross v. Commissioner, 1 Cir., 169

[1] A similar regulation, Art. 332, Treas. Reg. 77, was in effect for the year 1932 when the taxpayers reported constructive receipt of the items involved in the deficiencies for the year 1939.

F.2d 483, 490. Although the doctrine was doubtless conceived by the Treasury in order to prevent a taxpayer from choosing the year in which to return income by electing when he will reduce it to possession, the regulation lays down a rule of uniform application, which the taxpayer as well as the Commissioner may invoke. So the Ross case held, and we agree with it. Hence if the facts show a constructive receipt of income in earlier years, the petitioners may assert the doctrine to defeat an attempt to tax it in a later year.

The taxpayers were the executors of the estate of their father, Jonas Weil, who died in 1917. The Surrogate's Court of New York County in which his estate was being administered entered a decree on February 11, 1932 and another in March 1940 directing the executors to pay to themselves certain sums.[2] The sums awarded by the 1932 decree were included by the taxpayers, who were on the cash receipts and disbursements basis, in their respective income tax returns for 1932; but by reason of losses claimed on worthless stock their returns showed no tax due. The income tax return for the Jonas Weil estate did not show payment of the 1932 awards to the petitioners; it showed a loss of some $90,000 without them. Although each petitioner reported the full amount of the award to him, the portion thereof actually received in cash in 1932 was $30,064.08 by Benjamin and $29,131.68 by Victor. The balance of the 1932 awards they collected in instalments during subsequent years, the final payment in 1939 being $31,862.67 to Benjamin and $11,953.72 to Victor. This payment the Commissioner ruled to be taxable in that year, thus producing the 1939 deficiencies.

The 1940 award of executor's commissions was similarly treated by the taxpayers as constructively received in that year. In his 1940 income tax return each taxpayer reported the full amount awarded him, and paid the tax thereon computed as though

the amount were received during the years 1930 to 1938 inclusive, under the option granted to taxpayers by § 107(a) of the Internal Revenue Code, 26 U.S.C.A. § 107(a). The sum actually paid each taxpayer in 1940 was $5,000, and in 1941 each received an additional payment of $10,000 on account of the award. This is the item producing the 1941 deficiencies.

The Tax Court held that there was no constructive receipt by the petitioners of the sums awarded them by the 1932 and 1940 decrees for two reasons: (1) Because such sums "were neither credited to the accounts of the petitioners in those years, nor were they set apart for them in any manner"; and (2) because the Jonas Weil estate did not have sufficient cash during those years to pay the petitioners the amounts awarded them.

It is true, as the Tax Court found, that the estate did not set up the awards of the Surrogate's Court in favor of the petitioners as accounts payable, and the amounts of the awards were not credited on the estate's books in the years they were made, and no funds were segregated or set apart for them. But it is also true that the only books kept by the estate were books of cash receipts and disbursements. Having no ledger, the estate's only record of accounts payable would be the decrees of the Surrogate's Court directing the executors to make the payments. Section 19.42-2 of Regulations 103 does not require any particular type of bookkeeping. Indeed, the section itself clearly implies that a book entry is not the only way to establish a credit, since it provides: "A book entry, *if made*, should indicate an absolute transfer from one account to another" (italics added). Usually, of course, an entry on the obligor's books crediting a sum to the account of the obligee will be the best evidence that the obligee has only to reach out his hand to reduce the debt to possession, but it is not necessarily the only evidence that he

---

[2] The 1932 decree awarded each of the taxpayers $61,715.06 as executor's commissions for their services during the years 1917 to 1928 inclusive; it also awarded Benjamin $48,224.61 and Victor $9,370.34 as interest on large contract claims adjudged in their favor in 1927 and already paid them, but without interest, except for $868.32 paid on Feb. 26, 1932.

The 1940 decree awarded each of the taxpayers $29,141.38 as executor's commissions for the years 1930 to 1938 inclusive.

has unfettered control of the money. See Acer Realty Co. v. Commissioner, 8 Cir., 132 F.2d 512, 515–516.

Assuming arguendo that, in the case of an estate where the books kept by the executors show only receipts and disbursements, probate decrees directing the executors to pay specified sums to themselves individually as fees or interest on their allowed claims against the estate may be considered as a "credit" of income to their personal accounts, within the meaning of the constructive receipt Regulations, the question remains whether, without more, it is a credit of income "which may be drawn upon by him [the taxpayer] at any time" and "without any substantial limitation or restriction as to the time or manner of payment." We think this question must be answered in the negative. It is elementary law that in probate administration, executors are regarded as separate legal persons in their individual and official capacities. The decrees directing payment leave it discretionary with the executors when the payment is to be made. In exercising their discretion they must consider the interest of the estate without regard to their personal interest with respect to receipt of payment. This is obvious when the estate has insufficient cash on hand and the executors must sell some asset or borrow money on the credit of the estate in order to obtain the necessary funds to make payment to themselves individually. They must choose the time to sell or borrow with an eye single to the interests of the estate. Even when the estate has cash on hand sufficient to pay the fees or interest awarded by a probate decree, their fiduciary duty requires them to consider whether payment should be temporarily deferred because the cash may be needed for other purposes, such, for example, as payment of taxes accrued or about to accrue. Consequently until the executors do something to indicate that their discretion has been exercised in favor of immediate payment to their personal accounts, they do not in their individual capacities have unrestricted control of the money. Had the executors kept a ledger account and credited the fee to the taxpayers' personal accounts that might suffice to show that they had only to ask for

it to receive it. Had they done some other thing, for example, claimed credit for the payment in the estate's income tax return for the year in which the decree was entered, that might also show the immediate availability of the money to the taxpayers. But in the case at bar they did nothing in their official capacity to indicate that the money was immediately available to them in their personal capacity.

Nor was it shown to the satisfaction of the Tax Court that the condition of the estate in 1932 or 1940 was such that deferment of payment could not have been required in the interests of the estate. As the Tax Court's findings of fact noted:

"* * * The record does not disclose the extent of the liabilities either by stipulation or evidence. Nor is the record clear as to the amount or manner of payment of the current operating expenses of the estate. Therefore we do not find that during the year 1932 there were sufficient cash assets available in the Jonas Weil Estate to pay the claims of the petitioners for their executor's compensation and interest while at the same time paying the operating expenses and keeping a sufficient reserve to meet outstanding liabilities. From 1932 to 1941 the annual operating expenses were substantially the same each year. In 1933 they were $65,000 and in 1934, $69,000."

The petitioners ask us to reverse the finding that sufficient cash was not shown to have been available to make the payments in 1932. The chief assets of the estate were real estate, mortgages, and a half interest in the real estate and mortgages owned by the firm of Weil & Mayer. Mr. Victor Weil testified that the estate's half interest in the firm was always worth more than $1,000,000 and that he and his brother had the right to draw checks against the firm's funds. But whatever their rights as partners of the firm to draw checks, their rights as executors of the estate were to an accounting in liquidation of the firm. Until such an accounting was had the cash funds of the partnership cannot be treated as cash of the estate. See In re Prince's Will, 141 Misc. 600, 601, 252 N.Y.S. 908, 910, and cases there cited. In January 1932 the assets of the estate, excluding the part-

nership interest in Weil & Mayer, totaled about $331,000. During 1932 the monthly bank balances on the first of each month ranged from a high of $231,000 in March to a low of $153,000 in December. During the year the taxpayers were paid sums aggregating $59,195.76 and the balance remaining to be paid was $121,829.31 which is about $31,000 less than the estate's bank balance on December 1, 1932. But the 1932 decree also awarded $40,000 to attorneys for the executors, $24,831.92 to the executors of the deceased executor Samuel Weil, and $7,500 to a special guardian. And the operating expenses paid in 1933 were $65,-000. Mr. Weil testified that "There was a monthly receipts [sic] of rents from the houses which took care of all the expenses and much more than the liability incurred each month," but he was unable to support his general statement by particulars, although admitting that real estate taxes ran into thousands of dollars, that repairs had to be made, and there were also management fees, insurance premiums and all the usual expenses in maintaining buildings. Upon the facts shown we do not think the court's findings with respect to the failure to prove the availability of cash to pay the petitioners in 1932 can be overruled.

With respect to the year 1940 the showing of available cash was less favorable than in 1932. The petitioners argue that the estate could have made payment by borrowing money or by transferring to the petitioners mortgages at their face value. As already indicated in our earlier discussion this would have required the executors to exercise their discretion, which they never did.

In our opinion the record does not show error in refusing to apply the doctrine of constructive receipt in favor of the petitioners in 1932 or 1940. Accordingly the decisions must be affirmed.

L. HAND, Chief Judge (dissenting).

The "constructive receipt" of income is a creation of the Treasury, aimed at preventing taxpayers from selecting the year in which it will be most to their advantage to include in their gross income such items as those here at bar. It is a just corollary of such a doctrine that it shall be applied in favor of taxpayers as well as against them; and we all agree that Ross v. Commissioner,[1] was right in so holding. Therefore our decision ought not to be different from what it would be, had the taxpayers had no losses in 1932, and had been assessed in that year for the receipt of the sums in question. So far as concerns their commissions, I cannot believe that they could have resisted such an assessment. The surrogate had allowed these to them upon an accounting; and they were administration expenses of the estate. Although there appears to be little authority on the question in New York, such as there is indicates that they are a claim prior to debts,[2] and of course prior to legacies. I agree with my brothers that the law still preserves the fictitious "persona" of the executor, and that it was necessary for these taxpayers, as executors, to draw cheques to their own order as individuals; but that did not give them the privilege of manipulating the date of the receipt at their pleasure; indeed, we have just held the contrary in a situation far stronger for the taxpayer.[3]

Therefore, as soon as they were in funds sufficient to pay the commissions, I think that they "received" them and would have become assessable upon them. I should indeed agree that, if the exercise of their power to take the money involved a possible breach of their fiduciary duty as executors, the power alone would not constitute a "constructive receipt." But of that there was no possibility, if I am right that the commissions had been definitely allowed, and were prior to all other claims. True, it might develop that so to reduce the cash of the estate might later hamper the conduct of the business; and on that account they might have preferred not to press their rights. But they were under no duty not to press them, any more than they were under a duty to contribute to the business out of their personal resources in any other

---

[1] 1 Cir., 169 F.2d 483.

[2] Halsey v. Van Amringe, 6 Paige, N. Y., 12, 16; In re Bates' Estate, 167 Misc. 641, 654, 4 N.Y.S.2d 444.

[3] Aramo-Stiftung v. Commissioner, 2 Cir., 172 F.2d 896.

way. Had they urged such a defense against an assessment, the Commissioner could properly have answered that they must be just before they were generous; and must pay their taxes before they created a reserve in favor of creditors or legatees.

The other part of the claims was for interest upon past advances, made by the taxpayers to the estate. These also the surrogate had allowed by decree upon the accounting, in which it must have appeared that there were assets enough to pay all claims in full. It is of course conceivable that the assets had so shrunk that all the debts so allowed could not be paid in full; and it is also possible that after the accounting debts had been incurred in the conduct of the business which had a similar priority. The Tax Court's refusal to accept the testimony as conclusive against these possibilities seems to me to stretch its prerogative very nearly to the breaking point; but, as my views are not in any case to prevail, I do not feel myself charged with the duty of deciding whether that refusal was "clearly erroneous." However, if it be further argued that these supposititious expenses of administration also put in doubt whether the commissions remained unconditionally payable, I answer that there must be an end to imaginary obstacles thrown in the path of a taxpayer under the guise of compelling him to prove his case.