## WISDOM et ux. v. UNITED STATES.
### No. 13172.

United States Court of Appeals
Ninth Circuit.
May 29, 1953.

George Bouchard, Prentiss Moore, Los Angeles, Cal., for appellants.

Ellis N. Slack, Acting Asst. Atty. Gen., S. Dee Hanson, Sp. Asst. to Atty. Gen., Walter S. Binns, U. S. Atty., Paul Magasin, Asst. U. S. Atty. Los Angeles, Cal., H. P. Zarky, Sp. Asst. to Atty. Gen., for appellee.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

POPE, Circuit Judge.

In the years 1943, 1944 and 1945, the Blatz Brewing Company of Milwaukee, Wisconsin, was represented in the States of California, Arizona and Nevada, and the Territory of Hawaii, by a wholesale commission broker known as P. W. Wisdom, of Los Angeles. The taxpayer, Paul W. Wisdom, one of the appellants here, asserts that the "P. W. Wisdom", broker for Blatz, was for tax purposes a partnership composed of himself, his wife, and his two married daughters. The income of the business for those years was returned in separate tax returns in which the two appellants, Paul W. Wisdom and his wife, Evelyn F. Wisdom, each included one-third of the income from the operation of the business for those years. Each of the two daughters included in her income, as returned, one-sixth of the income from the business. The Commissioner of Internal Revenue made a determination that the business was exclusively that of Paul W. Wisdom, and that the income from the business for those years should be equally divided between Wisdom and his wife, the latter participating by reason of her community property interest.

The appellants paid all taxes thus assessed against them and brought actions below, which were consolidated for trial, to recover the claimed overpayment. This appeal is from a judgment against them, following findings by the trial court that the plaintiffs had not established that in the years in question the two daughters were partners for tax purposes or that during the years in question the plaintiffs and their daughters in good faith and acting with a business purpose intended to join together in the conduct of the enterprise as partners. The appeal presents another family partnership controversy.

The record shows that from 1934 until 1949, the appellant Paul W. Wisdom was selling in the States and Territory mentioned, and on a commission basis, the products of certain Milwaukee brewing companies. In 1934, as an individual, he entered into a written contract with Miller Brewing Company. This contract expired early in 1941. On July 10, 1941, again in his own name, he entered into a similar written agreement with Blatz Brewing Company. That arrangement, with the modifications hereafter mentioned, continued until 1949.

January 1, 1939, while the Miller contract was in effect, the appellants executed a document reciting: "We hereby sell and convey to Anita F. Wisdom, a one-sixth interest in our brokerage business." Anita was one of the two daughters here mentioned. A similar document was simultaneously executed to the other daughter, Barbara. At that time Anita was not quite twenty years of age and Barbara was seventeen. The appellants, claiming to have entered into an oral agreement of partnership with their daughters on January 1, 1939, filed partnership income tax returns for the year 1939. In 1940 a revenue agent advised Wisdom that he intended to disallow the partnership because the agreement was not in writing and because the above mentioned assignments were not assignments of property rights. Following this, on January 1, 1941, the appellants and their two daughters entered into a written partnership agreement purporting to confirm the oral partnership agreement of January 1, 1939. It recited that the partnership should be conducted under the name of "P. W. Wisdom"; that each party "should contribute such time and effort as might be required", and that the interests should be P. W. Wisdom, one-third, Evelyn F. Wisdom, one-third, and each of the daughters, one-sixth. At that time Anita had married and was Anita Foley; Barbara was married in July, 1941; and in the years in question both daughters were in their own homes and away from the residence of the taxpayers. This written agreement of January 1, 1941 made reference only to the current Miller Brewing Company contract and future contracts that might be entered into with that Company. Five days later, on January 5, the appellants and the daughters made a supplemental partnership agreement which referred to "any future contract entered into for the promotion and sale of beer or any other commodities, by any of the parties hereto". On May 14, 1941, there was filed in the office of the

County Recorder of Los Angeles County, a "Certificate of Business-Fictitious Firm Name" reciting that the appellants and their two daughters were conducting a brokerage business under the "fictitious firm name of P. W. Wisdom".

As indicated, Wisdom's first written agreement with Blatz Brewing Company executed July 10, 1941, was taken in his own name. The contract prohibited any assignment of his interest without the consent of the Brewing Company. On October 7, 1941, he requested consent to assign an interest in this contract to his wife and two daughters but with the understanding that all commissions payable under the contract should be payable to him. After the Company had indicated its willingness to give consent, he requested that the contract be rewritten, making as the only change the recital that the contract was with the partnership. His letter making this request, dated November 7, 1941, stated: "As matters appear today, it would be necessary for me to show a valuable consideration for making an assignment, and that would be difficult for me to do, as the Government seems to be very particular regarding income tax returns. Therefore, if it meets with your approval I suggest that to make it easier for me, the contract be rewritten and made in the name of the copartnership as we originally started out." Following this, the agreement was rewritten and dated back to bear the date of the original agreement between the Company and Wisdom, namely, July 10, 1941.

Throughout the period during which these various contracts with the two brewing companies were in existence, the manner of conducting the brokerage business was substantially the same. The business was as a matter of fact carried on exclusively by the appellant Paul W. Wisdom. The record discloses that it was his work, his contacts with the trade, and his know-how which produced business and profits and which caused the brewing companies to seek his services. The evidence discloses, and the court found that, "the entire income from the business was from commissions resulting from the sale of beer products as a result of the personal efforts of the plaintiff, Paul W. Wisdom". During the earlier periods following 1934, the daughters were attending school and living at home. During that time, when they were not required to be in school, these daughters, then 16 and 14 years of age, and then studying typing in high school, did some typing and mailing of letters for their father. Those were in the years before there was any purported partnership.

The trial court found that these were services of a minor nature which did not contribute substantially to the earning of income from the business. At any rate, after the purported contracts of partnership, the daughters had married and left home. The trial court found and the evidence showed that neither the wife nor either of the daughters performed any services or participated in the management or control of the business in the tax years here in question. It is plain, and the court correctly found, that the operation of the business required little or no capital.[1]

The income here involved is exclusively income from services; none of it was derived from property, and when Paul W. Wisdom, after seeking consent of the Blatz Brewing Company so to do, undertook to assign an interest in his contract to the other members of his family, just as when

[1] The court found: "During the years 1943 to 1945, neither Evelyn F. Wisdom nor either of the daughters performed any services to the business nor participated in the management or control of said business. The daughters spent no appreciable amount of their time in the conduct of said business. During the tax years involved the income from the business in its entirety resulted from the personal efforts, services and labor of the plaintiff, Paul W. Wisdom. Neither the wife nor the daughters contributed anything specifically to the production of said income. During said years all of the income from said business resulted entirely from the personal services of Paul W. Wisdom either in the past or during said years. The business required no inventories and no accounts receivable were carried on the books."

he undertook on January 1, 1939, to convey what he called an interest in his brokerage business, it is plain that as a matter of substance he was not transferring or assigning any property, but was undertaking to assign future income.

In our opinion, the case is ruled by the decision in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. In that case the taxpayer had entered into an agreement with a corporation which he controlled, whereby specified royalties would be paid to him by the corporation on account of sales of patented devices made by the corporation pursuant to licenses received from him. These were his royalty contracts. He assigned his interest in them to his wife and reported the income therefrom as hers. The court decided that the simple fact that the taxpayer purported to assign his royalty contracts to his wife did not prevent the application to him of the rule of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731,—the assignment of the right to receive income, without more, is not enough to insulate the assignor from income tax liability. The court pointed out that the crucial question was "whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes." [333 U.S. 591, 68 S.Ct. 722.] It referred to the application of these rules to intra-family assignments and transfers, and held that the agency designated by law to decide this crucial question of fact was in that case the Tax Court. Its decision, "if firmly grounded in the evidence and if consistent with the law" was to be respected on appeal. It concluded that the facts in that case fully sustained the tax court's determination that the income under the royalty contracts was taxable to the recipient taxpayer and said: "There is absent any indication that the transfer of the contracts effected any substantial change in the taxpayer's economic status. Despite the assignments, the license contracts and the royalty payments accruing thereunder remained within the taxpayer's intimate family group. He was

able to enjoy, at least indirectly, the benefits received by his wife. And when that fact is added to the legal controls which he retained over the contracts and the royalties, it can fairly be said that the taxpayer retained the substance of all the rights which he had prior to the assignments."

Here the court has found that "During all of the tax years involved, and prior thereto, plaintiff, Paul W. Wisdom, controlled and managed the business, conducted all correspondence, hired and fired all employees, and was in complete charge and control of the operation of the business." Manifestly neither of the brewing companies would have been interested in the arrangement if Paul W. Wisdom had withdrawn or had died. Since the whole enterprise thus centered about his personal services and his peculiar familiarity with the business, it is hard to perceive any business purpose in the formation of a purported partnership or any reason for making the so-called partnership agreements except as a scheme for the assignment of income derived from Wisdom's personal services.

Appellants, on the other hand, urge that the decisions relating to assignment of income are not applicable here. Their contention is that the parties, parents and daughters, entered into an arrangement which meets the requirements of the law of California for the creation of a valid partnership; that the fact that by mutual consent the income of the business was divided between the four of them, sufficiently shows that under local law there was in fact a partnership; and they contend that the substance of the holding in Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, is that if a partnership is real in that it meets the standards of local law, it must be treated as a partnership for tax purposes. Appellants say that the mere fact that the two daughters contributed neither vital services nor original capital does not require a disregarding of the partnership in the imposition of income tax.

It is true that in the Culbertson case the Tax Court was criticized for focusing its attention entirely upon concepts of "vital services" and "original capital" as the sole controlling tests without regard to the question of bona fide intent of the parties. The court stated that the true test to be applied was as follows: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case [Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L. Ed. 670], but whether considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise:" 337 U.S. at page 742, 69 S.Ct. at page 1214. Particularly important was its further statement 337 U.S. at page 744, 69 S.Ct. at page 1215: "Unquestionably a court's determination that the services contributed by a partner are not 'vital' and that he has not participated in 'management and control of the business' or contributed 'original capital' has the effect of placing a heavy burden on the taxpayer to show the bona fide intent of the parties to join together as partners."

■ The language last quoted we think is controlling upon this appeal. The trial court has found that the daughters contributed no services; that they contributed no capital; and that they have not participated in the management or control of the business. The taxpayers there-fore are under the heavy burden of showing the bona fide intent to join together as partners. The trial court has held that this burden has not been sustained and its holding in this respect cannot be said to be clearly erroneous.

Wisdom's real purpose was disclosed by portions of his letter quoted above in which he sought a rewriting of his individual contract with the Blatz Brewing Company "to make it easier for me" since "the Government seems to be very particular regarding income tax returns". He insisted in his dealing with Blatz that after the contract was rewritten all commissions payable under the contract should be paid to him and none to the others of his family; there was no separate partnership bank account; all funds were deposited in the bank account of the two appellants who had sole authority to draw on them. The customers of the business were never notified of the existence of any partnership; the business continued to be carried on in the name of P. W. Wisdom; all valuable papers of the business were kept in the safe deposit box of the taxpayers. Substantial portions of the funds derived from the business were kept in savings accounts, and interest upon each was collected and retained solely by the taxpayers. All correspondence was carried on by Wisdom in his own name, always using the first personal pronoun, and with no reference to any other member of his family.

We are of the opinion that there is wanting any ground on which to overturn the determination by the trial court that as a matter of fact the taxpayers have not sustained the burden placed upon them by the rule in the Culbertson case. See Harkness v. Commissioner of Internal Revenue, 9 Cir., 193 F.2d 655, certiorari denied 343 U.S. 945, 72 S.Ct. 1040, 96 L.Ed. 1349.

The judgment is affirmed.