**Dwight A. WARD, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Hanna P. WARD, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 14152.**

United States Court of Appeals Ninth Circuit.

June 22, 1955.

548

A. Calder MacKay, Arthur McGregor, Adams Y. Bennion, Richard N. Mackay, Stafford R. Grady, Los Angeles, Cal., for petitioners.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, Alonzo W. Watson, and David O. Walter, Sp. Assts. to Atty. Gen., Washington, D. C., for respondent.

Before STEPHENS and CHAMBERS, Circuit Judges, and YANKWICH, District Judge.

YANKWICH, District Judge.

Before us are the petitions of Dwight A. Ward and Hanna P. Ward to review decisions of the Tax Court entered on August 13, 1953, 20 T.C. 332 decreeing that there were deficiencies in the petitioners' income taxes for the year 1946 in the respective amounts of $8051.46 and $2444.45. The determination of the Tax Court was made on petitions from a determination of the Commissioner of Internal Revenue finding deficiencies in the respective amounts of $11,221.46 and $1,965.95.

Petitioners are husband and wife, the wife's case being here merely because of

her community interest under California law. Throughout the proceeding the record in the husband's case was used as that in the wife's case, because this controversy arose out of the business carried on by the husband as one of the partners in a commercial enterprise.

The reference to "taxpayer" will mean petitioner Dwight A. Ward.

For many years prior to November 1, 1945, taxpayer was an equal partner with his two brothers Harry Ward and D. T. Ward in a partnership which conducted the business of manufacturing refrigerators under the name of "Ward Refrigerator & Mfg. Co.", at Los Angeles, California. Because of disputes as to the management of the business between the taxpayer and his two brothers, the two brothers filed, on November 1, 1945, in the Superior Court of the State of California, for the County of Los Angeles, a petition for the dissolution of the partnership and the appointment of a receiver. On the same day, the Court appointed R. E. Allen receiver, and ordered him to operate the business, and, upon proper application to the Court, to sell it.

The business was sold at a public sale to taxpayer's two brothers for the price of $820,000.00, the Order confirming the sale being entered by the Court on February 14, 1946. Taxpayer had a one-third interest in the partnership. The cost basis of his one-third interest in the partnership on the date of sale was $140,756.64. His one-third share was $211,111.26. Taxpayer received the proceeds from the sale on the dates and in the amounts following: February 5, 1946, to April 3, 1946, $2,800.00; March 12, 1946, $14,500.00; April 22, 1946, $173,000.00; April 25, 1946, $2,785.17; May 14, 1946, $956.46; January 2, 1947, $2,073.34; January 2, 1947, $14,926.66, and, *some time in 1947,* $69.63, making a total of $211,111.26.

The purchase price for the taxpayer's partnership interest was paid to the receiver in cash about May 14, 1946. The payment of $17,000.00, consisting of the two amounts paid on January 2, 1947, was delayed because of a notice of attachment served on Allen, the receiver, by Walter Webb in an action instituted by him against the taxpayer for personal services alleged to have been rendered to him personally, *and not to the partnership,* during the two years prior to April, 1946. The attachment was issued on April 19, 1946, after the filing of the complaint. Upon being served with the statutory notice, the receiver drew a check for $17,000.00 upon the receivership funds to himself *as trustee,* which he deposited in a separate bank account as *a special trust account* to abide the outcome of the action. Appropriate entries on the receiver's books to reflect the segregation of the amount were made. The receivership fees were paid to Allen on April 5, 1946. However, as is customary when funds are in the hands of the receiver to take care of contingencies that might arise later, he was not actually discharged until March 21, 1947.

Taxpayer excluded $17,069.63 from the reported selling price of the partnership interest, but used the total cost basis as an offset in computing the amount of taxable gain reported in his return.

After a trial of the issues in Webb v. Ward, the Court awarded to the plaintiff $11,000.00, subject to the offset of an amount claimed to have been paid to Webb by Ward. After discussions with the Court and negotiations between counsel, it was agreed that payments of $8926.66 should be offset against the award, and a final judgment was entered in favor of Webb, on January 2, 1946, for the sum of $2073.34. On the same day the attachment was released, and the receiver paid to Webb the amount of his judgment and gave to taxpayer a check for the balance in the trust account, $14,926.66. The Tax Court found that taxpayer's gain in the sale, *including the amount of $17,000.00,* was realized in 1946, although payment of the amount was deferred, *by reason of the attachment,* until 1947. Section 111, Internal Revenue Code of 1939, 26 U.S.C., 1952 ed., § 111.

The taxpayer has challenged the correctness of this finding as well as of the

findings disallowing the sum of $4000.00 paid to Benjamin S. Parks, attorney, and $5000.00 paid to Roy C. Seeley, appraiser, claimed as deductions. Instead, the Tax Court allowed these sums as offsets against the selling price. For convenience of treatment and to avoid repetition, a more detailed analysis of the facts relating to these two matters will be given further on in the opinion. For the moment, we advert to certain general legal principles which apply to the situation.

Since 1948, the findings of the Tax Court have the same force as those of the "decisions of the district courts in civil actions tried without a jury". 26 U.S.C. § 1141(a). This section applies to reviews of the decisions of the Tax Court the rule that "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.

■ This Court, in giving effect to the mandate of the Congress, expressed in the Amendment of 1948, has stated that it is not our function to *retry* cases on review, and that we will not disturb a finding or conclusion of the Tax Court "unless clear error appears". National Brass Works, Inc., v. C. I. R., 1953, 9 Cir., 205 F.2d 104, 107 [1].

■ Another principle to be borne in mind is that upon a sale incidental to the dissolution of a partnership, whether by agreement of the parties or through judicial proceeding,—in fact, *through any of the methods provided by State law,*—

the distributive shares received by the partners after sale are not income, but gain upon the sale of a capital asset within the meaning of Section 117(a) and (b) of the Internal Revenue Code, 26 U.S.C., 1952 ed., § 117(a) and (b). See, Stilgenbaur v. United States, 1940, 9 Cir., 115 F.2d 283, 286–287; United States v. Adamson, 1947, 9 Cir., 161 F.2d 942; Hatch's Estate v. C. I. R., 1952, 9 Cir., 198 F.2d 26, 29.

■ As the transaction upon which taxes were assessed was a sale upon dissolution of a partnership through court action in a proceeding in the State courts, California Corporations Code, § 15032, in which, for the purpose of dissolution and sale of the property, a receiver was appointed, it is well to state that, under California law, a receivership is an ancillary proceeding. California Code of Civil Procedure, § 564 et seq. The receiver in California is an officer of the court whose possession of property is that of the court for the benefit of all persons who may show themselves to be entitled to it. Adams v. Haskell, 1856, 6 Cal. 113; Pacific Ry. Co. v. Wade, 1891, 91 Cal. 449, 454–456, 27 P. 768, 13 L.R.A. 754; Tapscott v. Lyon, 1894, 103 Cal. 297, 37 P. 225; Highland Securities Co. v. Superior Court, 1931, 119 Cal.App. 107, 112–114, 6 P.2d 116; Chiesur v. Superior Court, 1946, 76 Cal.App.2d 198, 199, 200–201, 172 P.2d 763. When a receiver is appointed to sell the property of a partnership, he holds the proceeds of the sale for distribution to the parties entitled to them.

1. See, Gillette's Estate v. C. I. R., 9 Cir., 1950, 182 F.2d 1010, 1014; Wisdom v. United States, 9 Cir., 1953, 205 F.2d 30, 33; Stockton Harbor Industrial Co. v. C. I. R., 9 Cir., 1954, 216 F.2d 638, 640. Other Courts of Appeals have stated the scope of the 1948 Amendment in the same manner: See, Burford-Toothaker Tractor Co. v. C. I. R., 5 Cir., 1951, 192 F.2d 633, 634–635; George Kemp Real Estate Co. v. C. I. R., 2 Cir., 1950, 182 F.2d 847, 848–849; Omaha Nat. Bank v. C. I. R., 8 Cir., 1950, 183 F.2d 899, 902; Commissioner of Internal Revenue v. Nubar, 4 Cir., 1950, 185 F.2d 584, 589; Tennessee, Alabama & Georgia Ry. Co. v. C. I. R., 6 Cir., 1951, 187 F.2d 826, 831; Benton v. C. I. R., 5 Cir., 1952, 197 F.2d 745, 753; University Chevrolet Co. v. C. I. R., 5 Cir., 1952, 199 F.2d 629, 631; Builders' Steel Co. v. C. I. R., 8 Cir., 1952, 197 F.2d 263, 264; Friend v. C. I. R., 10 Cir., 1952, 198 F.2d 285, 287; Rider v. C. I. R., 8 Cir., 1952, 200 F.2d 524, 525; Mabee Petroleum Corp. v. United States, 5 Cir., 1953, 203 F.2d 872, 873; Roscoe v. C. I. R., 5 Cir., 1954, 215 F.2d 478, 481.

■ These general considerations must be borne in mind in determining the matters before us. For, while, *generally*, state rules are not *necessarily* binding in federal tax matters, where taxable situations arise from relationships entered into under state law, their nature and the rights of the parties under such law must be kept in view in determining the incidence of federal taxation. This is especially true in considering the first problem before the Court, —the refusal of the Tax Court to overturn the determination of the Commissioner that the taxpayer was taxable in 1946 upon his full share of the purchase price received for the sale of the partnership business, and in not allowing deduction from the amount received in 1946 of the sum of $17,000.00 attached in the hands of the receiver in the action instituted by Webb on April 19, 1946. California Code of Civil Procedure, §§ 537, 542(6).

■■ Here again, it will be helpful to consider the nature of attachments. Under California law, an attachment is an auxiliary proceeding. It may be issued at the time of issuing the summons and its object is to attach the property of the defendant

"as security for the satisfaction of any judgment that may be recovered, *unless the defendant gives security* to pay such judgment * *." California Code of Civil Procedure, § 537. (Emphasis added.)

The attachment is merely a *sequestration* of the debtor's funds to abide the judgment. They still remain the property of the debtor and title to them passes to the attaching creditor *only* after a judgment in his favor has been entered, in which case the lien of the attachment is *merged* into that of the judgment. Kinnison v. Guaranty Liquidating Corp., 1941, 18 Cal.2d 256, 115 P.2d 450; Puissegur v. Yarbrough, 1946, 29 Cal.2d 409, 175 P.2d 830; Pintel v. K. N. H. Mohamed & Bros., 1951, 107 Cal.App.2d 328, 237 P.2d 315. The lien extends only to the interest of the debtor at the time of the levy, and the attaching creditor

"obtains only a potential right or a contingent lien." Puissegur v. Yarbrough, supra, 29 Cal.2d at page 412, 175 P.2d at page 831.

The Supreme Court has approved this description of the lien created in California by attachment as "apt", adding:

"The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a *lis pendens* notice that a right to perfect a lien exists." United States v. Security Tr. & Savings Bank, 1950, 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53. (Emphasis in text)

The same case states that while a state court's classification of a lien, although entitled to weight, is subject to reexamination by the federal courts, nevertheless

"if the state court itself describes the lien as inchoate, this classification is 'practically conclusive.'" 340 U.S. at page 50, 71 S.Ct. at page 113.

We now return to the specific problems before us as reflected in the Tax Court's decision.

■■ The Tax Court found that the transaction which formed the subject of the action in which the attachment was issued was "a wholly unrelated claim". Whether this language properly describes the transaction or not, these undisputed facts appear from the record: The receivership was auxiliary to the dissolution of a partnership through court action. California Corporations Code, § 15032. A receiver was appointed to effect the dissolution. The sale of the business of the partnership and its purchase by two of the partners, the brothers of the taxpayer, was the judicial

means for terminating the partnership and awarding to taxpayer his share of the purchase price after deducting the costs of the receiver's operation of the business prior to the sale, his expenses of administration and such claims as were presented and allowed in the course of administration. The cost basis of taxpayer's one-third interest in the partnership on the date of sale was $140,756.64. The sale was for $820,000.00. The tax-payer's one-third share of the net proceeds of the sale was $211,111.26, without taking into account the effect on it, if any, of the action instituted by Webb and the levy under the attachment proceedings in it. The taxpayer's entire share of the proceeds, excepting the sum of $17,000.00, was paid to him between February 5, 1946, and May 11, 1946. The money garnisheed was deposited by the receiver in a separate trust account. The garnishment conformed to California law. Money in the law's custody is not, ordinarily, subject to garnishment. However, if a person is entitled *to a definite distributive share* of a fund in the law's custody, one of his creditors may, under California law, garnishee it in the hands of the officer, such as a receiver or court clerk having the custody. Dunsmoor v. Furstenfeldt, 1891, 88 Cal. 522, 527–528, 26 P. 518, 12 L.R.A. 508; Widenmann v. Weniger, 1913, 164 Cal. 667, 675, 130 P. 421; Youtz v. Farmers' etc., Nat. Bank, 1916, 31 Cal.App. 370, 373, 160 P. 855; City of Los Angeles v. Knapp, 1937, 22 Cal.App.2d 211, 213, 70 P.2d 643. So when the plaintiff in the action against Ward served the receiver with a notice of garnishment, that officer properly set aside, in a special trust fund, the amount claimed. California Code of Civil Procedure, § 544. The action in which the attachment was issued was *not* against the partnership, but against the taxpayer for services claimed to have been rendered to him *personally*. Neither the other partners, as individuals, nor the partnership, as an entity, were made parties to the action or served with any process in it. Nor were any of their funds garnisheed. In the circumstances,

the Tax Court was correct in ruling that the taxpayer *realized* his share of the purchase price in 1946, and that the postponement of the actual possession by him of $17,000.00 of his share of the proceeds of the sale *did not* arise from a condition *inherent* in the sale.

■ It is an accepted principle in the law of income taxation that if, in order to reduce funds to the taxpayer's actual possession, action beyond his control is required, there is no realization. This situation arises when, for instance, approval of a court in order to withdraw money deposited in the court's registry by the Government in a condemnation proceeding is required, Nitterhouse v. United States, 3 Cir., 1953, 207 F.2d 618, 620—or the taxpayer, being the executor of an estate, has to determine whether the interests of the estate warrant immediate payment to himself of money allowed him by order of court. Weil v. C. I. R., 2 Cir., 1949, 173 F.2d 805, 808–809. In such instances, the failure of the taxpayer to make the legal showing in order to secure court approval for withdrawal of funds deposited or to exercise his own discretion in favor of immediate payment to himself, does not justify charging him with the income he *might have* received but for his *failure to act*. See, North American Oil Co. v. Burnet, 1932, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197; Commissioner of Internal Revenue v. Wilcox, 1946, 327 U.S. 404, 409, 66 S.Ct. 546, 90 L.Ed. 752. Had the court in which the receivership was pending delayed distribution of the proceeds of the sale until the disposition of the litigation between Webb and the taxpayer, the act would have been one *beyond the control* of the taxpayer. But the withholding by the receiver, out of the taxpayer's share, of the amount garnisheed until the following year arose *not* from any of the conditions of the sale or the orders of the court in which the receivership was pending, but *from the fact of attachment* in a personal action against the taxpayer in which a levy sequestered the funds. The sale had been completed before the attachment was issued and the

levy made and the entire amount of the taxpayer's share, including the money garnisheed, was actually *available* for payment to him. U. S. Treasury Regulation 111, Sec. 29.42–2; McEuen v. C. I. R., 5 Cir., 1952, 196 F.2d 127.

Which means that the conditions for the application principle adverted to do not exist. United States v. Pfister, 8 Cir., 1953, 205 F.2d 538, 541 [2].

So the Tax Court was justified in holding that the amount garnisheed under the Writ of Attachment was *realized* in 1946, although not actually paid over to the taxpayer until January, 1947. Which brings us to the other two items in the Tax Court's decisions which are under attack.

The Tax Court found that after the other brothers filed suit to dissolve the partnership, the taxpayer engaged the services of Benjamin S. Parks as his attorney, who rendered services between the early part of December, 1945, and February 8, 1946, during which period he devoted most of his time to the taxpayer's affairs, continuing to represent him, when necessary, until January, 1947. During the taxable year, the taxpayer paid to Parks sums aggregating $10,000.00. Parks' services were not limited to strictly legal problems. He assisted the taxpayer in his efforts to secure financial backing in order to buy out his two brothers. Parks secured the assistance of a Mr. W. C. Graham of San Francisco, who bid up the property and only ceased bidding when his final bid of $815,000.00 was overbid by the taxpayer's brothers, who bid $820,000.00. In conjunction with the sale, Graham insisted that the services of Roy C. Seeley be secured for the appraisal of the property. The taxpayer paid to the Company of which Seeley was a member $5000.00 for the services, under an agreement which provided, in effect, that the taxpayer would guarantee and pay a minimum fee of $5000.00 to Seeley if the assets were sold to some one other than Graham and at a figure of more than $800,000.00 gross. Pursuant to this agreement, the Roy C. Seeley Company made several value analyses of land, buildings, machinery and inventory of the partnership business. As a consequence of Parks' and Seeley's efforts and services, Graham became interested in purchasing the business and agreed to bid up to $800,000.00 for the business, and taxpayer, in turn, agreed to exchange his one-third interest in the partnership for one-third of the common stock of a corporation to be organized and which was to operate the business if Graham's bid acquired it. Taxpayer also agreed to be active in the new business and to become a director of the corporation. Petitioners each deducted one-half of the $5000.00 as a miscellaneous deduction.

Although the Tax Court treated these two items separately, we shall treat them together, because their

---

2. In Parkford v. C. I. R., 9 Cir., 1943, 133 F.2d 249, 251, this Court stated:

"*The situation of the taxpayer would not be different taxwise had the sum owing been seized by a creditor through process of garnishment after it had been earned.* The taxpayer obtained the economic benefit of the income through its disbursement to his creditors, although he denies receiving any benefit because, he says, he was entitled to his discharge regardless of whether the creditors received anything. But we think the latter circumstance is immaterial. The net result of petitioner's argument is that the portion of the fee received by the trustee, although undeniably income to somebody, was legally income to nobody. We conclude that since the income accrued to the taxpayer he must account for it in his return. The taking over of the amount by the trustee for the payment of debts was the final step by which the taxpayer obtained the fruits of the accrual." (Emphasis added.)

The Court was considering the effect of the claim of a trustee in bankruptcy to a commission earned by the bankrupt. Hence the statement as to the effect of the garnishment was, in a sense, *obiter.* But it aptly illustrates a situation in which, although the taxpayer has no actual possession of the income, it nevertheless *accrues* to him. So the language correctly described a situation such as that confronting us *here,* and is justly anticipatory of, and spells out, the ruling to be made.

solution depends upon the application of the same principles. The Tax Court allowed as a deductible business expense under Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C. § 23(a) (1) (A) $6000.00 of Parks' fee. But $4000.00 of it was allowed only as an offset against the selling price,—an expenditure made in connection with the sale of a capital asset. See, Coke, 1951, 17 T. C. 403, affirmed in Commissioner of Internal Revenue v. Coke, 5 Cir., 1953, 201 F.2d 742. It also allowed as an offset the $5000.00 fee paid to Seeley. It is not disputed that services of this type that are not compensable as commissions in sales are proper offsets. Spreckels v. Helvering, C.I.R., 1942, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073, affirming Spreckels v. C. I. R., 9 Cir., 1941, 119 F. 2d 667; C. I. R. v. Covington, 5 Cir., 1941, 120 F.2d 768, 770. But it is insisted that these amounts should have been treated as deductible non-business expenses paid "for the production or collection of income", under Section 23(a) (2) of the Internal Revenue Code, 26 U.S.C., 1952 ed. § 23(a) (2). To be deductible as such, expenses must

> "bear a reasonable and proximate relation to the production of income or to the management, conservation or maintenance of property held for the production of income." United States v. Lykes, 5 Cir., 1951, 188 F. 2d 964, 967 [3].

And where the expenditures were fees paid to an attorney to represent a taxpayer in a dispute as to the amount due on an option agreement, Naylor v. C. I. R., 5 Cir., 1953, 203 F.2d 346, or to litigate on behalf of a dissenting stockholder who was seeking to recover the cash value of the stock of a corporation merged with another corporation, Heller v. C. I. R., 9 Cir., 1945, 147 F.2d 376, the

facts complied with these tests. But here, the two "agreeing" partners and the taxpayer, who was the "dissident" partner, competed for *the purchase* of the partnership as a going concern. Parks was employed to assist in securing a person who would finance the taxpayer in his attempt to purchase. He helped interest Graham who insisted that Seeley's services be secured. Seeley was promised a fee of $5000.00, if Graham was not the purchaser and the bid exceeded $800,000.-00. Graham's highest bid was $815,000.-00. He allowed a final $5000.00 raise in this bid to thwart the acquisition of the property by himself and the taxpayer. So the services of Parks and Seeley merely enabled the taxpayer to sell his interest in the property *at a greater profit*. They were not ordinary and necessary business expenses or non-business expenses incurred in the production or collection of income. In this respect, Cobb v. C. I. R., supra, Note 3, which has the approval of the Supreme Court, is very revealing. There, an attorney had been employed to represent the taxpayer in a claimed gift tax deficiency on account of interests in income-producing realty given to married daughters. The services of the attorney resulted in a reduction of the gift tax deficiency. It was argued that the amount so paid was deductible as ordinary and necessary expense incurred "for the production or collection of income." The contention was rejected, the Court saying:

> "The true criterion would seem to be that, to become deductible under the statute, the expense must be in proximate relation to the production or collection of income or to the care and conservation of property held to produce it. The paring of the deficiency in the taxpayer's gift tax through the efforts of his attorneys

3. In affirming the case, Lykes v. United States, 1952, 343 U.S. 118, 124, 72 S.Ct. 585, 589, 96 L.Ed. 791, the Supreme Court approved the test that to be deductible, expenditures must be *"proximately related to the production of income"*. And see, McDonald v. C. I. R., 323 U.S. 57, 61–62, 65 S.Ct. 96, 89 L.

Ed. 68; Cobb v. C. I. R., 6 Cir., 1949, 173 F.2d 711, 714, *the ruling in which was approved in Lykes v. United States, supra, 343 U.S. 124, 72 S.Ct. 585.* Certiorari was denied earlier, Cobb v. C. I. R., 338 U.S. 832, 70 S.Ct. 79, 94 L. Ed. 507.

was beneficial to him, in that he was not forced to sell other income-producing property, but the expense to that end is not appropriately classifiable as an expense directly incurred in conserving such property. The opinion in the Bingham case declares that section 23(a) (2) is in pari materia with section 23(a) (1), permitting the deduction of ordinary and necessary expenses *directly connected with or approximately resultant from the conduct of the business*, and that section 23 (a) (2) provides for a class of coextensive non-business deductions, except that the expenses need not be incurred in a business but only in the production of income or in the conservation or management of property held for the production of income." (Emphasis in text.) Cobb v. C. I. R., supra, Note 3, 173 F.2d at page 714.

In the case before us, the payments for Parks' and Seeley's services were, in effect, a capital expenditure to help the sale. Cf. Brown v. C. I. R., 5 Cir., 1954, 215 F.2d 697, 700–701; Shipp v. C. I. R., 9 Cir., 1954, 217 F.2d 401. Their efforts were "beneficial" to the taxpayer in that by the raising of the bid, he secured a higher price for his share. Hence, the expenditures were a legitimate offset against the cost of the property sold. But they cannot be classified as deductible expenses under Section 23(a) (1) (A) or Section 23(a) (2).

In the reply brief filed on behalf of the taxpayer, the object sought to be attained by the payment of the $9000.00 is stated in this manner:

"The $9000.00 in question was paid so that petitioners would have a bidder at the sale which would accomplish the purpose either of acquiring the business by an organization in which petitioners would be part owners or of increasing the price for which their interest would be sold. The first purpose was not realized but the second purpose became a fact in that the partnership business was sold for $820,000.00 instead of $450,000.00 which was the first bid of petitioner's brothers."

This being the taxpayer's own appraisal of the purposes for which Parks and Seeley were employed and what their employment achieved, it may be accepted as correct.

It follows that the ultimate result of the employment was *the sale* of the partnership assets *at a higher price*. The result thus achieved is, therefore, *no different* than that derived by the employment of a selling agent, and paying him a commission to secure a buyer *at a desired price*. Here the taxpayer did not buy, he sold. And the efforts of his agents helped *increase* the sale price of the property, and, consequently, *the value of his distributive share*. So the Tax Court was right in treating these expenditures as commissions.[4]

The decisions of the Tax Court are affirmed.

---

**4.** The facts in the case before us are different from those in Parker, 1943, 1 T.C. 709, relied on by the taxpayer. There the taxpayer employed an attorney to investigate certain mining property. The attorney made no charge for the investigation. However, after a favorable report, he advised the petitioner and others to advance money, *advancing some himself*, for the operation of the mine as a joint venture. The venture proving unsuccessful, the Court allowed the money advanced as a deductible loss "in a transaction for profit." The venture having been abandoned and a loss incurred, it was clearly deductible under Section 23 (a) (2). We fail to see how the reasoning of this case can be applied to a situation like the one before us in which, on a forced judicial sale, upon dissolution of a partnership in what was *a profitable going business*, the efforts of a lawyer and an appraiser succeeded in raising the price at which the business was sold, thereby "benefiting" the taxpayer by *"increasing"* the value of his share.