Juan Ramón Ramos, Plaintiff and Appellee, *v.* Secretary of the Treasury, Defendant and Appellant.

No. R-63-229.    Decided March 4, 1966.

---

*J. B. Fernández Badillo, Solicitor General, Jenaro Marchand,* and *Manuel Tirado Viera, Assistant Solicitors General,* for appellant. *Brown, Newsom, Córdova & Díaz* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

In 1953 and 1956 the taxpayer was engaged in the growing and harvesting of sugarcane. The taxpayer, in the management and administration of his business, did not keep accounting books and filed his income tax return on the cash basis system.

After the proper inspection was carried out the Secretary of the Treasury served upon the taxpayer delinquency notices for $46,918.43 and $2,725.94 for the first and second of said years respectively.[1]

The taxpayer, disagreeing with the deficiencies as notified, filed on time a complaint before the Superior Court, San Juan Part, contesting the deficiencies.

A hearing of the case on its merits was held and after several stipulations[2] the court a quo determined that the

---

[1] The deficiencies may be broken down into the following items:

|                                         | 1953        | 1956       |
| --------------------------------------- | ----------- | ---------- |
| Share in Partnership Profit             | $30,690.16  | $ —        |
| Undeclared Income from Cane             | 13,552.67   | —          |
| Items Disallowed for Lack of Evidence.  | 2,529.60    | 2,167.74   |
| Sale of Sugar                           | —           | 558.20     |
| Sale of Gasoline                        | 146.00      | —          |
| Total                                   | $46,918.43  | $2,725.94  |

[2] In the stipulations reached as the result of the hearing of the case the taxpayer admitted as correct the amounts of $2,167.74 and $146.00 while the Secretary agreed to reduce the $2,529.60 item to $1,456.00.

taxpayer had, in 1953, undeclared income amounting to $30,690.16, as profits from the Ramos Bros. partnership.[3]

Regarding the $13,552.67 item the court determined that it reflected income received from the liquidation of surplus of sugar; that the evidence furnished had shown that this item included two sums, one amounting to $4,534.07, attributed to income received by the taxpayer in 1952 and properly declared in his return for that year. The difference, that is, $9,018.60, was income from the same source received by the taxpayer in 1954 and also declared in the corresponding tax return for that year. Therefore, the court ruled that the $13,552.67 should be excluded from the deficiency.[4] At the request of the Secretary of the Treasury we issued a writ of review.

The Secretary of the Treasury contends that:

"The Court a quo erred in eliminating the $13,552.67 item from the taxpayer's taxable income for 1953 because this is in opposition to the evidence furnished and the admissions of the parties."

Our Income Tax Act of 1954, Act No. 91 of June 29, 1954 (13 L.P.R.A. § 3001 *et seq.*) and its regulations allows farmers to use any of three accounting methods in computing annual income for tax purposes, *Ramos Hermanos* v. *Sec. of the Treasury, supra;* 13 L.P.R.A. § 3041, §§ 22-A-7-6 and 23(a)11 of the Regulations. 13 R.&R.P.R. §§ 3022(a)–7, 3022(c)–6 and 3023(a)–11. These methods are the crop basis; the accrual basis and the cash basis.[5]

---

[3] This fact had been argued before this Court affirmed the decision in favor of the Secretary of the Treasury. See *Ramos Hermanos* v. *Sec. of the Treasury,* 89 P.R.R. 541 (1963).

[4] The court also eliminated the $558.20 from the 1956 deficiency on the grounds that no sufficient evidence regarding this item was offered. This determination is not contested in this appeal.

[5] Similar provisions are found in Act No. 74 of 1924, approved August 6, 1925, and its regulations. See §§ 3(d), 14 and 30 of the Act and §§ 63 to 66, 76, 89 and 90 of the Regulations.

■ Briefly defined the cash basis method consists of reporting only those items actually received whether in cash or its equivalent, and in reporting as deductions those items actually paid during the taxable period. See Arabía, *Manual de Contribución sobre Ingresos*, Rev. ed. 1959.

In a progressive rate tax system such as ours any taxpayer could easily avoid part of his tax liability merely by delaying the time of receipt of specific income thereby legally avoiding the declaration of the income in a particular year. Finnegan, *"Constructive Receipts of Income,"* 22 N.Y.U. Institute on Federal Taxation 367.

This situation created, in the federal tax system, an exemption applicable to the cash basis method known as the constructive receipts doctrine.[5a]

■ ■ According to this doctrine, in spite of the fact that a taxpayer elects the cash basis method, if at the end of any taxable year, specific income is set apart for the taxpayer without any restriction or limitation as to the time or manner of payment, such income shall be reported in that taxable year and not in a year convenient to the taxpayer to actually receive the payment. Sarky, *"Problems in Constructive Receipt and Deferral of Income,"* 13 N.Y.U. Institute on Federal Taxation 53, "A taxpayer, who has enjoyed the benefit of the economic profits represented by his right to receive such income, shall not even in those cases using the cash basis method, avoid taxation by the mere fact

---

[5a] From the first income tax regulations issued by the Treasury of the United States in connection with the Income Tax Act of 1918, until the present (see § 39.4202) this doctrine has been established through regulations. The above-mentioned section reads as follows:

"Sec. 39.4202, *supra*: Income which is credited to the account of, or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax in the year during which so credited or set apart, although is not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer, without any substantial limitation or restriction as to the time or manner of payment or condition under which payment is to be made, and the income must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition."

that he has not actually received payment thereof."[6] The taxpayer shall not be allowed to deliberately select the year in which his income shall be reported. *Washington* v. *Comm.*, 80 F.2d 829 (1936).

■■ The doctrine of constructive receipt may be invoked in favor of, as well as against the taxpayer. *Ross* v. *Comm.*, 169 F.2d 483 (1948); but it is applicable only in cases where the taxpayer has elected the cash basis system. Kutz, *"Constructive Receipts Reexamined,"* 12 N.Y.U. Institute on Federal Taxation 498; and even though of regulatory origin, jurisprudence, by application, has strengthened its legal effect.[7]

■ The following elements have been pointed out as essential requirements for the application of the constructive receipt doctrine: (1) the taxpayer must have sufficient control of the income in question so as to impute a constructive receipt; (2) the amount must be credited to, or set apart in favor of or to the use of, the taxpayer; and (3) the debtor must have sufficient funds available, so as to satisfy the debt at any time.[8]

■ The local law has adopted the constructive receipt doctrine. See Arabía, *supra* at 35; *Rubert* v. *Tax Court*, 74 P.R.R. 48, 63 (1952). Specifically Arts. 42–2 and 42–3 of our Regulations 13 R.&R.P.R. §§ 3042–2 and 3042–3, substantially similar to the federal provisions establishing this doctrine.[9]

The transcript of the record in our hands shows that in connection with the $9,018.60 item, reported by the taxpayer

---

[6] 2 Mertens, Law of Federal Taxation 4, § 10.02.

[7] *Hyland* v. *Comm.*, 175 F.2d 422 (1949).

[8] Finnegan *op. cit.* p. 368.

[9] Said articles read as follows:

"Article 3042–2. Income not reduced to possession.

"Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the

in 1954, the Secretary of the Treasury believed that that amount was made available to the taxpayer in 1953 and, therefore, contended that it should have been reported in 1953.

The witness' testimony in the hearing clarifies any doubt with regard thereto.

Manuel Comas Grass testified that he has worked for "Central San Vicente, Inc." since 1929 and at the present is an assistant manager (Tr. Ev. p. 36). At the taxpayer's request, a *colono* of the above-mentioned central for many

---

income must be *credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition.* A book entry, if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt." (Italics ours.)

"Article 3042–3. Examples of constructive receipt.

"If interest coupons have matured and are payable, but have not been cashed, such interest, though not collected when due and payable, shall be included in gross income for the year during which the coupons mature, unless it can be shown that there are no funds available for payment of the interest during such year. The interest shall be included in gross income even though the coupons are exchanged for other property instead of eventually being cashed. The amount of defaulted coupons is income for the year in which paid. Dividends on corporate stock are subject to tax when unqualifiedly made subject to the demand of the shareholder. If a dividend is declared payable on December 31 and the corporation intended to and did follow its practice of paying the dividends by checks mailed so that the shareholders would not receive them until January of the following year, such dividends are not considered to have been unqualifiedly made subject to the demand of the shareholders prior to January, when the checks were actually received. Interest credited on savings accounts, even though the bank nominally has a rule, seldom or never enforced, that it may require so many days' notice before withdrawals are permitted, is income to the depositor when credited. An amount credited to shareholders of a savings and loan association, when such credit passes without restriction to the shareholder, has a taxable status as income for the year of the credit. If the amount of such accumulations does not become available to the shareholder until the maturity of a share, the amount of any share in excess of the aggregate amount paid in by the shareholder is income for the year of the maturity of the share."

years; he analyzed the taxpayer's account for the years in question. The analysis shows that for the year ending December 31, 1953, the management of Central was interested in knowing its financial situation and, therefore, a provisional appraisal was made of the surplus that corresponded to the *colonos* for the delivery of the sugarcane and the production of sugar in the 1953 crop (Tr. Ev. p. 37); that the provisional liquidation was carried out on the books as of December 31, 1953; on the same date checks were issued for the corresponding balances in favor of the *colonos* but this did not mean that the checks were paid on that date because Central was dealing with six hundred *colonos* and it was physically impossible to pay all the checks that very same date (Tr. Ev. p. 38); and that *the income in question could not be at the taxpayer's disposal in 1953 because Central came to know the actual balance in favor of the taxpayer in the clerical and mechanical accounting process carried out subsequently* (Tr. Ev. p. 39).

■ The determination as to *when* or specifically within which taxable period certain income was placed at the taxpayer's disposal, in order to apply the constructive receipt doctrine, is a question of fact to be determined according to the evidence offered. *Ross* v. *Comm.*, *supra*, *Wail* v. *Comm.*, 173 F.2d 805 (1949). 2 Mertens, *op. cit.* at p. 6, § 10.02. The findings of the lower court in this respect shall be final unless passion, prejudice or partiality is shown in the weighing of the evidence, or the findings are clearly erroneous.

■ Regarding the $4,534.07 item the evidence offered by the taxpayer was also persuasive so as to sustain his contention that he received and used the item in 1952 the year when it was reported as income.[10]

The decision rendered by the lower court shall be affirmed.

---

[10] Entirely applicable to this case are, in our judgment, our statements in *Reyes* v. *Secretary of the Treasury*, 84 P.R.R. 574 (1962), regarding the responsibility of a taxpayer concerning evidence when he contests in court

a determination of the Secretary of the Treasury on the taxpayer's tax liability. We stated there that:

"We have repeatedly held that the administrative determinations of the Secretary of the Treasury are clothed with a presumption of correctness which is overcome by credible and reasonable evidence sustaining the taxpayer's contentions (citations); and that even though this evidence 'does not have to be extraordinarily persuasive and authentic or clear, strong and convincing, at least it should be within the degree and measure of persuasion required in all other civil cases,' as we stated in *Collazo* v. *Sec. of the Treasury*, 82 P.R.R. 629, 635 (1961). . . . The taxpayer's evidence having been produced, it was incumbent on the Secretary to introduce evidence to support his contentions, and the evidence which was produced herein amounted to 'remaining idle and relying on the presumption of correctness,' *Carrión* v. *Treasurer of P.R.*, 79 P.R.R. 350, 363 (1956). All that the trial court had to consider was whether the evidence presented by the taxpayer which was not controverted in any way whatsoever, was reliable and whether or not it reasonably sustained his contention. Certainly it is not obligatory to believe or accept the uncontested testimony of the interested party when it is highly improbable (citations), or obviously unreasonable (citations). There is nothing in the case at bar which specifically shows that credence was not given to the taxpayer's evidence, which when weighed as a whole, is sufficiently convincing to sustain the position he assumed in the suit."