DWIGHT A. WARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HANNA P. WARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31416, 31417.   Promulgated May 14, 1953.

*Adam Y. Bennion, Esq.*, for the petitioners.
*Donald P. Chehock, Esq.*, for the respondent.

336

338

OPINION.

BLACK, *Judge:* The five issues presented for our decision are set forth in our preliminary statement. Each issue will be taken up in its order.

## First Issue.

The principal issue in this proceeding involves part of the proceeds from petitioners' sale of their partnership interest. The sale took place on February 8, 1946, conducted by a court receiver who had been appointed to dissolve or sell the partnership. Petitioners realized a total sale price of $211,111.26. Since the basis for their interest sold was $140,745.64, the gain from the sale was $70,365.62. The buyers paid the full purchase price to the receiver on or before May 14, 1946. The receiver then turned the proceeds over to petitioner during 1946, except for $17,000. This $17,000 was retained because of an attachment made on April 19, 1946, by Webb, a creditor of petitioner for services rendered. Subsequent to a lawsuit, the dispute was finally settled in January 1947, whereupon the attachment was released and the $17,000 paid to petitioners and Webb.

The controversy involves whether this $17,000 of the $70,365.62 gain is taxable to petitioners in 1946, the year before the Court. Petitioners contend that since their income is reported on the cash basis the $17,000 is properly to be reported in 1947, the year of actual receipt, there being no actual receipt during 1946. Respondent, on the other hand, contends that the entire gain must be reported in 1946, the year the sale took place. Respondent states his contention in his brief as follows:

Webb filed his attachment against funds belonging to the petitioner, but then in the custody of the receiver, solely as a matter of convenience. He could just as well have filed his attachment against other property or funds of the petitioner. It is not reasonable to defer profit on the sale merely because the petitioner disputes the demand of a creditor on a claim which is completely foreign to the sale of the petitioner's interest. To allow such a deferment would permit the petitioner to distort the fact that he incurred all the profit in 1946, from the completed sale of his partnership interest. The petitioner engaged in a completed business transaction which was entirely performed in one taxable year, and he is required to report the gain therefrom in that year. This gain cannot be deferred to subsequent years by coloring the original transaction with acts and events which are not related thereto. It is the respondent's contention that the entire gain from the sale of property for a cash consideration, with no strings attached to its payment as between the purchaser and the seller, is derived in the year of the sale and must be included in taxable income. The peculiar circumstance that a portion of the funds were tied up by a stranger to the transaction, with respect to a wholly unrelated claim, should have no bearing upon the determination of the profit derived. * * *

Our decision here turns upon section 111 of the Code which appears in the margin.[1] As we see it, petitioners' gain here was "real-

---

[1] SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis

ized" during the taxable year 1946, as provided in the statute. The fact that the receipt of a portion of the sale proceeds is deferred by an attachment unrelated to the property sold or the sale does not defer the realization of gain on the sale for tax purposes.

There can be no question but that the partnership business was sold in 1946 for a cash consideration of $820,000. It has been agreed what petitioner's one-third net interest was, $211,111.26. The fact that $17,000 of petitioner's interest was tied up in 1946 by an attachment proceeding entirely unrelated to the sale, it seems to us, makes no difference in the tax consequences of the sale. If, for example, the entire amount of petitioner's one-third interest had been paid to him in 1946 and he had deposited it in a bank and $17,000 of it had been attached, no contention could be made that petitioner's gain would not be taxable in 1946. Yet, under such latter circumstances the $17,000 would be just as effectually tied up as it was when attached in the receiver's hands in 1946. In considering the issue here involved, it should be remembered that this is no case where the purchasers withheld $17,000 of the purchase price from the sellers because something remained to be done to complete the sale such as perfect the title or something of that kind. If that were the situation then the cases cited and urged by petitioners would be in point and the $17,000 would not be taxable to them until 1947, when they should actually receive it. But, as we have already pointed out, that is not the situation here. The attachment suit was entirely unrelated to the sale or in the slightest degree to the payment of the purchase price to the sellers. For this reason we think the cases cited and urged by petitioners are not in point.

Applying the general rules governing sales and exchanges as we understand them, we hold that petitioners realized the entire gain from the sale during the taxable year 1946. The respondent did not err in his determination on this issue.

### Second Issue.

The second issue concerns a $10,000 fee paid by petitioners to their attorney during the taxable year. Petitioners contend that the legal

provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

(c) RECOGNITION OF GAIN OR LOSS.—In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this chapter, shall be determined under the provisions of section 112.

(d) INSTALLMENT SALES.—Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received.

fee is deductible under section 23 (a) (1) (A) or 23 (a) (2) or 23 (e). Respondent in the deficiency notice disallowed the deduction claimed by petitioners on their tax returns, but in computing petitioner's capital gain the fee was allowed as an offset against the gross selling price of the partnership interest.

As we have explained in our Findings of Fact, the partnership was about to be dissolved so petitioners engaged Parks as their attorney to advise and represent them in respect to their interest in the partnership. Parks rendered these services and was paid $10,000 therefor. The proper tax treatment to·be accorded a payment to an attorney cannot be determined merely from the fact that the payment was for legal services rendered. We need to know the purpose for the legal services. Occasionally the tax consequences of an expenditure, that is its deductibility or the type of deduction to be allowed, is contingent upon the outcome of a related transaction. Such is the case here for until the dispute among the partners was settled the true nature and purpose of the expenditure could not be determined. This dispute might well have resulted in a reconciliation, as is sometimes the case among partners, or the petitioner might have exchanged his partnership interest for shares of corporate stock. As it so happened here, the ultimate outcome was that petitioner sold his interest in the partnership.

Parks described the nature of his services to petitioner in a letter which he wrote to petitioner September 1, 1949, which was introduced in evidence by respondent. In this letter Parks, among other things, said:

The services for which this bill was rendered·commenced in November, 1945, and continued up to and including the 23rd day of May, 1946.

These services consisted of legal work pertaining to the receivership for the partnership known as the Ward Refrigerator & Manufacturing Company which was then pending upon a dissolution proceeding instituted by Harry and D'Artagan Ward against Dwight A. Ward. This receivership continued until the sale of the business through a receiver's sale on February 8, 1946, but many details of the termination of the receivership were continued on until the latter part of May.

Also this billing was for services rendered by me in attending with you and on my own behalf numerous conferences with various financial institutions, banks, brokers, investment houses, etc., discussing the entire situation pertaining to the receivership and the pending sale; endeavoring to interest these various persons in bidding at the time of the sale or in effecting a purchase which would obviate the necessity of the sale; drafting numerous documents with various persons of this character outlining the basis upon which their compensation would be paid in the event that they were successful in obtaining interested financial assistance.

Parks testified at the hearing and his testimony was in substance the same as the above quotation from his letter to petitioner. We think the $10,000 fee which petitioner paid Parks for his services is properly

allocable between the services which he rendered petitioner generally as his attorney in the receivership proceedings and the particular services which he rendered petitioner in securing Graham as a bidder at the sale.   On other occasions, when the facts call for it, we have allocated attorneys' fees between deductible and nondeductible purposes, see for example *Agnes Pyne Coke*, 17 T. C. 403, affd. 201 F. 2d 742.  We think that a fair and reasonable allocation of the $10,000 attorney's fee is on a 60–40 basis.  We hold that petitioners may deduct $6,000 under section 23 (a) (1) (A) of the Code and $4,000 is to be used as an offset against the selling price just like any other expenditure made in connection with the sale of a capital asset.

### Third Issue.

The third issue involves a $5,000 fee paid for services rendered petitioner by Roy Seeley, a real estate broker and appraiser.   The contract between petitioner and Seeley provided in respect to the fee as follows:

1. If the entire assets are sold to Mr. W. C. Graham, your client, for a sum of $800,000, or less, you are to receive your entire compensation from the Receiver on the usual brokerage basis allowed by the Receiver for the total price paid by Mr. Graham for such assets, whatever that sum may be.

2. If the assets are sold to someone other than Mr. Graham, and at a figure of more than $800,000 gross, then I am to pay you the sum of $5,000 from the cash reecived by me for my interest through such sale.

This contract was supplemented by another agreement made subsequently.   From these agreements, considering particularly the latter agreement, we conclude that what petitioner agreed to do was to guarantee Seeley a fee for his services.   If Seeley were not otherwise compensated for his services, then petitioner was to pay Seeley. Seeley's services consisted of appraising and advising the partnership business for Graham and bidding for Graham and petitioner at the auction sale.   Seeley performed his part of the contract and bid $815,000 but he was outbid at the auction sale.   As the partnership interest of petitioner was sold to others, petitioner paid Seeley the $5,000 due him under the contract.

The fee in question was contingent, not upon the eventuality of a sale, but upon the eventuality that Seeley did not otherwise earn a fee. Though there was a contingency in respect to the fee here, that fact *ipso facto* does not make the fee a selling commission.   What petitioner contracted to do was in effect to guarantee Seeley a fee.   Even though not a selling commission, we think the fee must be treated like a selling commission as an offset against the selling price.   In so concluding we have considered the nature of the services rendered, petitioner's purpose in contracting for the services, and the benefits received by petitioners from the services.

The fee paid Seeley is accorded a tax treatment to some extent different from that given the attorney's fee in Issue 2. The services of the attorney related also to partnership matters in general other than the sale, and an allocation of the attorney's fee to items other than the sale was proper. But in respect to Seeley's services, those services were directly attached only to the auction sale. Under these circumstances no allocation seems permissible. Respondent did not err in determining that Seeley's fee was an expense of the sale and, as such, is an offset against the selling price.

### Fourth Issue.

During the taxable year petitioner paid $1,085.41 for the medical care of Metta Hollenback. Petitioners took this deduction as a charitable deduction on their returns. They now claim this is deductible as an ordinary and necessary business expense. Metta was an employee of the partnership business until February 1946. She had worked for the partnership for some time as the petitioner's secretary. Metta's employment by the partnership ended when petitioner sold his interest therein.

Respondent's only contention is that this sum is not a business expense. We are unable to agree with respondent in this contention. By reason of being a partner in a business petitioner was individually engaged in business within the meaning of section 23 (a) (1) (A) of the Code. *Flood* v. *United States*, (C. A. 1, 1943) 133 F. 2d 173. The fact that petitioner was no longer in business at the time the expenditure was made does not mean the deduction is therefore to be denied. The *Flood* case so holds. We cited and followed the *Flood* case in *Morgan S. Kaufman*, 12 T. C. 1114. See also *Walter F. Burrows*, 38 B. T. A. 236.

The *Flood* case, *supra*, is controlling here. We hold, therefore, that petitioners are entitled to a deduction under section 23 (a) (1) (A) for the $1,085.41 paid during the taxable year for the care of petitioner's former secretary, Metta Hollenback.

### Fifth Issue.

During February and March of the taxable year petitioner expended $2,075 in investigating the possibility of entering the business of manufacturing and selling concrete blocks. After the sale of his partnership interest petitioner devoted his working time to organizing and developing the new business. This sum was expended prior to the operation of the new business as Concrete Products Company, a corporation. By devoting his efforts in organizing the new business, petitioner was not thereby engaging in business himself. Not being

engaged in a business himself, petitioner is not entitled to a deduction under section 23 (a) (1) (A).

Petitioners contend also that the amount in question is deductible as a nontrade or nonbusiness expense under section 23 (a) (2). We do not agree with their contentions. They ignore the fact that the sum in question was incurred for the benefit of the corporation, and only indirectly for petitioner. We think that this expenditure was by its nature organizational expense of the corporation. The evidence indicates the petitioner has not been reimbursed for this expenditure. In such cases this expenditure would doubtless become a part of petitioner's cost basis for his shares of stock. On this issue the respondent is sustained.

Certain of the issues raised by the pleadings have been settled by the parties by stipulation and effect will be given thereto.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

HILL, *J.*, dissenting: I dissent from the holding in the foregoing opinion which approves a deduction for the payment by petitioner of expenses for medical care of a former secretary of the partnership involved in this proceeding. The deduction is claimed as a business expense.

It is not claimed that the partnership had any plan, policy, or obligation to make payments to its retired or former employees or any employee in the nature of a pension, retirement pay, or additional compensation for past services. Nor is it claimed that petitioner was authorized to act or did act for the partnership in making the payment in question for or on behalf of the former secretary of the partnership. It is apparent that even if such payment had been made under the authority or legal obligation of the partnership only one-third of such obligation to make such payment would have devolved upon petitioner.

The facts upon which the claim for such deduction are premised demonstrate unmistakenly, it appears to me, that the payment for which the deduction is claimed was a purely personal expense. It was a mere charitable contribution and as such it is, of course, not deductible.

The revenue law does not contemplate that the Federal Treasury shall forego tax revenue in order to share the effectuation of a generous impulse of a taxpayer in making charitable contributions to individual persons. Brushing over such acts with a thin veneer of claimed "business expense" should not be permitted to thwart the revenue law in this respect.

The *Flood* case and other cases cited to support the holding in question are not authority for such holding. In the *Flood* case there was an authorization made and an obligation assumed by the partnership to make post-service payments to the employees as compensation for former services to the partnership in addition to the regularly stipulated and paid compensation for such services. Upon the dissolution of the partnership the partners individually assumed proportionately the obligation to pay such additional compensation in accordance with their several interests in the partnership. It was on this fundamental factual premise, totally lacking in the instant case, that the partner in the *Flood* case was allowed to deduct as a business expense the proportionate payment of such authorized and assumed obligation of the partnership. Petitioner concedes in the instant case that he had no legal obligation to make the payment for which he claims the deduction here in question.

To me it seems obvious that whether or not the holding in the *Flood* case is sound on the basis of its facts it is too far a cry from the factual situation there to that of the instant case for the voice of authority to carry.

The *Burrows* and *Kaufman* cases cited in the majority opinion in this connection differ so widely from the case here in their factual structure as to eliminate even a remote parallelism with it.

I can see no reasonable alternative to the conclusion that the expenditure here sought to be deducted is a personal expense for which no deduction lies.

The holding here in question, aside from the unwarranted loss of tax which it entails in the instant case, is fraught with the potentiality of a spreading hazard to the revenue, presently and in the future.

The Federal Treasury has no surplus waters in its stream of revenue. It needs no spillways. If the holding here in question is adhered to it will open an eroding outlet through the revenue dike which is not only not authorized but is specifically prohibited by section 24 (a) (1) of the Internal Revenue Code. Accordingly I dissent.

BRUCE, *J.*, agrees with this dissent.

---

WITHEY, *J.*, dissenting: In this case I must dissent upon the second issue, in other words the allocation of the attorney fee here involved upon a 60–40 per cent basis. I do so for the reason that the opinion as written though appearing to rely upon *Cohan* v. *Commissioner*, 39 F. 2d 540, does not cite that case. I believe that in order to make a proper allocation it is necessary even upon the authority of *Cohan* that there be some ascertainable basis for such an allocation. None is disclosed by the findings of fact herein. The case cited as support

for our right to allocate is *Agnes Pyne Coke*, 17 T. C. 403. In that case it is clear that there is an ascertainable basis for the allocations made therein.

It is clear to me that this Court has the duty to make an allocation where possible, but it is equally clear that where a taxpayer has so far failed to sustain the burden of proof as to leave the record bare of any facts upon the basis of which we may reasonably make an allocation, it is our duty to uphold the respondent in his assertion of a deficiency. To hold otherwise is to clothe ourselves with the power of an equity court which powers we do not possess.