## OTTO C. DOERING, JR., AND LUCY T. DOERING, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87757.   Filed January 4, 1963.

*John E. Tobin, Esq.*, for the petitioners.
*Warren Shine, Esq.*, and *Michael Weinberg, Esq.*, for the respondent.

OPINION.

FAY, *Judge:* The respondent determined a deficiency in income tax of $2,333.38 for the calendar year 1956. The only issue for decision is whether payments in 1956 for legal and bank services furnished in connection with the settlement of a contract claim were capital in nature or deductible expenses incurred in the production or collection of income.

All of the facts have been stipulated and are found accordingly.

Petitioners are husband and wife and reside in Scarsdale, N.Y. They filed their income tax return for 1956 with the district director of internal revenue at New York, N.Y.

Petitioner Otto C. Doering, Jr., hereinafter referred to as petitioner, was a shareholder of Argosy Pictures Corp., hereinafter referred to as Argosy, from its date of incorporation in 1946 to its date of liquidation in January 1956. The business of Argosy was to produce motion pictures. At the time of the liquidation petitioner owned 20 percent of the outstanding stock of Argosy and had held all of such stock for more than 5 years.

In January of 1950 Argosy contracted with Republic Pictures Corp., hereinafter referred to as Republic, to produce three motion pictures

for distribution and exhibition by Republic. In return for producing the motion pictures, Argosy was to receive a specified portion of the respective net profits of Republic attributable to the pictures. By the end of 1952 Argosy had produced the three pictures which were entitled "Rio Grande," "The Quiet Man," and "The Sun Shines Bright." Argosy produced no further pictures for Republic. Republic exhibited the three pictures in question and rendered quarterly statements to Argosy of the gross amounts received from exhibition and the expenses attributable thereto.

A dispute arose between Argosy and Republic principally as to whether Republic was entitled to charge certain of its expenses against the exhibition receipts from these three pictures and as to whether Republic was obligated to return to the United States and to pay to Argosy its share of the profits received by Republic from exhibition of these films in foreign countries and particularly countries having currency restrictions. For a period of over 3 years prior to its dissolution, Argosy, through its executives and its counsel, had conducted negotiations with Republic and its counsel looking toward a settlement of this dispute. Argosy paid its attorneys $54,660.34 during this period in full payment of their fees and disbursements.

Argosy retained an accounting firm to audit the accounts of Republic with respect to the contract between Republic and Argosy and was advised by them that in their opinion a substantial amount in excess of $1 million was due Argosy. At the same time Republic contended that it had actually overpaid Argosy, a position it maintained until the dispute was settled.

Argosy was dissolved in January 1956 and its assets were distributed in liquidation to its shareholders. These assets included the claim of Argosy against Republic. On the dissolution of Argosy petitioner received $12,822.05 in cash, plus his pro rata interest in the claim against Republic. Argosy's claim against Republic had no ascertainable fair market value when distributed to Argosy's shareholders.

The former Argosy shareholders, including petitioner, thereafter engaged the law firm that had been employed by Argosy prior to its dissolution to attempt to recover from Republic whatever sums were allegedly due under the contract. The attorneys employed by the former shareholders of Argosy made an analysis of Republic's contentions regarding the Argosy claim. At the same time settlement negotiations with representatives of Republic were continued.

The former shareholders of Argosy also engaged Bankers Trust Co. to receive and disburse any future settlement proceeds collected from Republic, and deposited with Bankers Trust Co. the cash which they had received on the dissolution of Argosy in order to provide a fund to meet their anticipated legal expenses.

In December of 1956 Republic, in exchange for releases by the former Argosy shareholders of all claims under the aforementioned con·

tract, paid $540,000 to Bankers Trust Co. for the account of the said former Argosy shareholders, in settlement of the dispute. Petitioner's pro rata share of said settlement sum was $108,000, from which Bankers Trust retained $400 for its services and $6,360 for payment to the attorneys for their legal services, both of which amounts were petitioner's pro rata share of the total amounts paid to Bankers Trust and the attorneys. The law firm's fee was based on its hourly charges for legal services of its partners and legal staff, and not in relation to the amount Republic agreed to pay.

The said $108,000, together with the $12,822.05 in cash received from Argosy on May 11, 1956, as a distribution in liquidation, was reported in Schedule D of petitioners' income tax return for 1956 as the proceeds from the sale or exchange of a long-term capital asset. The said $6,360 and $400, totaling $6,760, were deducted by petitioners as an itemized nonbusiness expense in their 1956 tax return. The respondent disallowed the claimed deduction.

The instant case involves the question whether expenses incurred for legal and banking services furnished petitioner in connection with the settlement of a contract claim, which claim had no ascertainable fair market value at the time of its distribution to petitioner pursuant to a corporate liquidation, were capital in nature or were deductible under section 212 of the Internal Revenue Code of 1954.[1]

Respondent's position stems from the pronouncement of this Court and others that if contractual rights having no ascertainable fair market value are received in liquidation of a corporation, the transaction remains open, and when some payment is realized subsequently upon that asset, said payment is treated as an amount received in exchange for the stock of the liquidated corporation. *Susan J. Carter*, 9 T.C. 364 (1947), affd. 170 F. 2d 911 (C.A. 2, 1948); *J. C. Bradford*, 22 T.C. 1057 (1954); *George J. Lentz*, 28 T.C. 1157 (1957); *Westover v. Smith*, 173 F. 2d 90 (C.A. 9, 1949). Respondent reasons that since the transaction remains open and amounts subsequently recovered are treated as distributions in exchange for petitioner's stock, the expenses incurred by petitioner to recover these amounts are in the nature of expenses of a sale or exchange and as such merely reduce the amount of gain arising from the exchange. The petitioners' answer to respondent's contention is that there is a difference between the fact of a sale or exchange and the realization and recognition of gain from a sale or exchange, that in the instant case the exchange itself was completed when petitioner surrendered his stock and received his share of Argosy's assets, and that consequently the expenses were incurred solely for the purpose of collecting upon his interest in a

[1] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

contract which had already been distributed to him pursuant to the completed exchange.

In *Naylor* v. *Commissioner*, 203 F. 2d 346 (C.A. 5, 1953), reversing on the facts 17 T.C. 959 (1951), the taxpayer became involved in a dispute with the purchaser of his stock regarding the amount due under the sale contract. The taxpayer employed an attorney to negotiate and, if necessary, to sue for the purchase money due him under the contract. The taxpayer utlimately received $580,000 for his stock. Thereafter the taxpayer paid the attorney $28,000 for his services and sought to deduct the amount as a nonbusiness expense incurred for the collection of income. The Court of Appeals noted that the attorney was employed after an enforcible contract of sale existed and held that under the circumstances the legal expenses were deductible as expenses incurred for the collection of income.

In the present case, petitioner upon the dissolution of Argosy in January of 1956 received an interest in Argosy's claim against Republic. As between Argosy and petitioner the exchange was complete, and petitioner was now the unqualified owner of an undivided interest in the Republic claim. Subsequently, the petitioner, in concert with the other owners of the Republic claim, engaged an attorney to negotiate and, if necessary, to sue for the amounts allegedly due under the claim. Through the efforts of the attorney, petitioner received the sum of $108,000 from Republic. Petitioner thereafter paid legal and banking fees attributable to the Republic settlement in the amount of $6,760. If no other factors were present we believe the deductibility of the petitioner's expenses could be sustained under the rationale of *Naylor* v. *Commissioner, supra.*

The instant case is complicated, however, by the fact that under the rule of *Susan J. Carter, supra*, the petitioner's receipt in liquidation of the Republic claim from Argosy remained an open transaction and that as a result amounts subsequently *received* are to be treated as being *received* in exchange of stock. Relying on this fact, respondent argues, in effect, that since the transaction is considered open, amounts subsequently *expended* in connection with the distributed claim are to be treated as being *expended* in connection with the exchange of stock. We believe the respondent's position requires an unreasonable extension of our holding in the *Carter* case. The deductibility of legal expenses depends upon the purpose for which they were incurred. *Lykes* v. *United States*, 343 U.S. 118 (1952); *Dwight A. Ward*, 20 T.C. 332 (1953), affd. 224 F. 2d 547 (C.A. 9, 1955). The record clearly discloses that the petitioner as assignee of Argosy incurred the contested expenses for the sole purpose of collecting sums allegedly due him under a fully executed and enforceable contract; of equal clarity is the fact that the expenses were not incurred to effect a disposition of petitioner's stock in Argosy. In

essence, if we were to adopt respondent's contention, we would be exalting fiction and renouncing reality. See and compare *Pierce Estates, Inc.*, 3 T.C. 875, 892 (1944), where the deductibility of legal fees incurred as a result of a dispute regarding the method of payment under a previously executed assignment, which assignment provided, in part, for the *future* payment of percentage royalties, was sustained.

The respondent further contends that the Court should be reluctant to allow a taxpayer to be taxed on receipts at capital gain rates and at the same time to deduct expenses as ordinary deductions when both the receipts and the expenses arose out of the very same transaction. In *Ticket Office Equipment Co.*, 20 T.C. 272, 280 (1953), affirmed per curiam 213 F. 2d 318 (C.A. 2, 1954), we sustained the deductibility of legal fees as ordinary and necessary business expenses when the related receipts were taxed at capital gain rates. In accord, *United States* v. *Pate*, 254 F. 2d 480 (C.A. 10, 1958). We are not, therefore, favorably disposed to sustain respondent's disallowance on this ground. See also *Agnes Pyne Coke*, 17 T.C. 403, 407 (1951), affirmed per curiam 201 F. 2d 742 (C.A. 5, 1953).

Reviewed by the Court.

*Decision will be entered for the petitioners.*

---

WITHEY, *J.*, concurring: While concurring in the result reached by the majority in this case, I do not agree that the attorney fee is deductible by any reference whatsoever to the nature (ordinary income or capital) of the amount collected as a result of the services for which the attorney fee was paid. The attorney fee is specifically deductible under section 212(1), it being an ordinary and necessary expense paid during the taxable year for the collection of income. The only question which might be raised with respect to the wording of section 212 is whether the word "income" means ordinary income or capital. The respondent's regulations dispose of this question in the taxpayer's favor. See sec. 1.212–1(b), Income Tax Regs. The Commissioner there states: "The term 'income' for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property." It seems well settled, *Susan J. Carter*, 9 T.C. 364 (1947), affd. 170 F. 2d 911 (C.A. 2, 1948); *J. C. Bradford*, 22 T.C. 1057 (1954); *George J. Lentz*, 28 T.C. 1157 (1957); *Westover* v. *Smith*, 173 F. 2d 90 (C.A. 9, 1949), that the nature of the collection here made is capital. The 1954 Internal Revenue Code contains provisions, section 263 through section 273, specifically providing for the nondeductibility of certain items of expense including in section 263

as "capital expenditures." Yet nowhere therein is the specific allowance of the deductibility of amounts expended for the collection of income limited in any way.

———

RAUM, *J.*, dissenting: Petitioner received $108,000 which is regarded herein as part of the proceeds received by him in exchange for his Argosy stock, resulting in the receipt of capital gain. In order to obtain such proceeds petitioner incurred expenses in the amount of $6,760. The proper tax treatment of these expenses is indicated by *Spreckels* v. *Commissioner*, 315 U.S. 626, which held that commissions paid in connection with the sale of securities are not deductible as expenses but are to be treated merely as reducing the sales price. Such commissions, although ordinarily of the type that would qualify under the statute as deductible expenses, are in substance a charge or offset against the proceeds and therefore operate merely to shrink the amount received in the disposition of the securities rather than as a deduction from ordinary income. In essence, that is the Commissioner's position here, and I think it is sound.

If, for example, the expenses herein were $70,000, we would have the strange result that at most only $54,000 would be reportable as income (one-half of the $108,000 proceeds, by reason of the capital gains provisions) whereas a deduction of $70,000 would be allowable under the Court's decision. Thus, a transaction actually producing a net profit would appear on the return as a net loss. If such is required by the statute, then, of course, that would be the end of the matter. But I think it is not required, and that *Spreckels* points the way to the correct answer.

TIETJENS, FISHER, and PIERCE, *JJ.*, agree with this dissent.