Arthur Kurland and Marilyn Kurlan v. Commissioner. Arthur Kurlan v. Commissioner.
Kurlan v. Commissioner
Docket Nos. 89176, 89177.
United States Tax Court
T.C. Memo 1963-282; 1963 Tax Ct. Memo LEXIS 61; 22 T.C.M. (CCH) 1445; T.C.M. (RIA) 63282; October 16, 1963
Burton L. Litwin, for the petitioners. Edward H. Hance, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies have been determined by respondent in the income tax of petitioners for the taxable year 1954 in the amount of $3,162.68 and in the income tax of petitioner Arthur Kurlan for the taxable year 1955 in the amount of $4,361.25. Certain issues raised by the pleadings have been settled by the parties by stipulation which will be given effect under Rule 50. The remaining issues are (1) whether respondent has erred in treating as ordinary income certain amounts received by petitioner Arthur Kurlan in each of the years at issue as a result of the settlement of a legal action instituted *62 by petitioner and (2) whether petitioner is entitled to deduct in the year 1954 legal fees paid for an attorney's services rendered in connection with such transaction. Findings of Fact Such facts as have been stipulated are found as fact. Petitioner Arthur Kurlan filed his 1955 Federal income tax return with the district director for the Los Angeles district of California. Petitioners Arthur and Marilyn Kurlan filed their joint 1954 Federal income tax return with the district director for the Upper Manhattan district of New York. Petitioner Arthur Kurlan was an independent writer and producer of motion pictures, radio, and television programs. Ruth McKenney is the author and creator of a certain literary property known as "My Sister Eileen," and of many other literary works based upon or using the characters in that book and is the owner of the copyrights thereon. Petitioner and Ruth McKenney entered into an agreement dated March 11, 1946. Using the characters in the foregoing literary productions, petitioner, for audition purposes, produced a sample wax recording for a radio program, in which he allegedly incorporated his new and original treatment and development of these *63 characters and their relationship, in a unique and distinctive manner, including new and original techniques and methods of presentation. On or about June 30, 1946, petitioner submitted his ideas and sample recording to officials of Columbia Broadcasting System, Inc., sometimes hereinafter referred to as CBS, as well as the idea and format of the untitled radio program. CBS then refused to buy the program from the petitioner. CBS subsequently produced a weekly television program on or about April 11, 1947, entitled "My Friend Irma," which petitioner alleges was similar to the petitioner's original radio program and format, and similar to the audition recording and the characters therein. On or about June 17, 1947, the petitioner commenced an action against CBS and certain of its officials, praying for damages in the sum of $150,000, which was later increased by amendment to the sum of $1,500,000, as damages for the wrongful appropriation of the rights, royalties, benefits, and profits to which petitioner claimed to be solely and exclusively entitled, which wrongful appropriation allegedly rendered the petitioner's property valueless. He prayed in the alternative for $1,500,000, *64 as net proceeds and net profits wrongfully derived by said defendants from their exploitation of the petitioner's rights and property. In the suit, petitioner alleged, among other things, that the series, "My Friend Irma," utilized, published, and made public the petitioner's unique development and treatment of the literary properties and the characters therein and the techniques, methods of presentation, and original format originated, created, and owned exclusively by the petitioner. In December 1953, the law suit was settled by mutual agreement for the sum of $75,000, payable as follows: $22,000
to Arthur Kurlan on or before De-
cember 31, 1953.
38,000
to Arthur Kurlan and Harold A.
Fendler (his attorney) jointly on
January 15, 1954.
15,000
to Arthur Kurlan on January 14,
1955.
$75,000
Total
Ultimate Finding The moneys paid to petitioner in pursuance of his settlement agreement with CBS were in consideration of the release of petitioner's claim for an accounting and reimbursement for proceeds resulting from the exploitation by CBS of his package radio program. Opinion The resolution of both issues herein depends upon the correct answer *65 to the query, why did CBS pay petitioner $75,000 in settlement of petitioner's suit against it? Necessarily, therefore, we must look to the circumstances surrounding the settlement transaction with particular reference to the nature of petitioner's legal action against that corporation. Harry L. Booker, 27 T.C. 932 (1957); Harold L. Regenstein, 35 T.C. 183 (1960). Petitioner brought suit against CBS because he felt and alleged that by its production of and broadcasting of the series entitled "My Friend Irma" the corporation had (1) destroyed his property rights in the fictional characters involved in the novel "My Sister Eileen," (2) plagiarized his format and technique for the treatment of such characters in a serialized raio broadcast, and (3) wrongfully exploited such characters, format, and technique, thereby enriching itself to his detriment for which enrichment he prayed for an accounting and money judgment. In the Superior Court for the County of Los Angeles, California, where petitioner's action against CBS et al. was instituted, a demurrer was filed to petitioner's complaint. Decision for the defendants was entered on the demurrer by that court. *66 The decision on the demurrer was appealed to the Supreme Court of California. That court's opinion is reported in Kurlan v. Columbia Broadcasting System, 256 P. 2d 962 (Cal. 1953). The opinion appears to us to be dispositive of petitioner's claim for destruction of his property rights in the literary property "My Sister Eileen" as a result of the following holding: Kurlan's complaint shows that any property interest which McKenney may have had in either the story or characters of "My Sister Eileen" has been lost by publication. According to the pleader, neither the product of McKenney's mind nor its representations or expressions remain in her possession. Therefore, as a matter of law, there is no protectible property in the "basic dramatic core" of the story, its characters and their relationships, or the form and manner of its expression. It is suggested however, that McKenney retained the right to use the characters "Ruth" and "Eileen" in sequels to the original stories. The implication is that no one else could acquire this right. But even if we assumed that characterizations may be protectible, these characters were products of the mind which intentionally had *67 been made public. Under the circumstances, there was nothing to prevent McKenney or anyone else from utilizing them in other productions. * * *
Kurlan's radio program idea was to capitalize upon a famous and successful story, play and motion picture by producing it on the radio. The court may take judicial notice of the fact that there is nothing new and novel in this idea which might constitute protectible property. Stanley v. Columbia Broadcasting System, supra, 35 Cal. 2d at page 663, 221 P. 2d 73. Whether there is any originality or novelty in Kurlan's "new program techniques and methods of radio presentation" is more difficult to determine. There is nothing novel about customary broadcasting techniques, but the court cannot have judicial knowledge of all of the methods of the highly complicated radio industry. It might be possible for Kurlan to show that he created something novel in the way of program techniques and methods of presentation. Because extrinsic evidence is required to prove whether there is any element of novelty in his program techniques, it cannot be determined, upon demurrer, that there is no protectible property in them. Insofar as the question *68 of a lack of originality or novelty may be involved in each cause of action, the demurrers could not properly have been sustained solely upon that ground. The next question for decision is that of similarity. Access and inclination to copy being admitted by the demurrer, then if it may be said that some substantial similarity between the programs reasonably could be found the issues of similarity and of copying are issues to be determined by the trier of fact. Having both programs before it upon demurrer in accordance with section 426(3), the court may determine whether there is substantial similarity between them. Weitzenkorn v. Lesser, supra. If, as a matter of law, there is no such similarity, then there is no question of fact and the demurrers to each count of the complaint were properly sustained. In order for the fifth count of the complaint to state a cause of action for plagiarism, there must be some substantial similarity between the defendants' radio program and protectible portions of Kurlan's production. Weitzenkorn v. Lesser, supra. Even if it might be found that there is some originality in the development of minor characters which Kurlan may have added to McKenney's *69 story for the purposes of the radio program, there is no similarity between them and characters in the defendants' program. Nor is there any similarity between the two shows as to the form and manner of expression of their literary content. However, some similarity might be found in the methods of program presentation and radio techniques. Because evidence may tend to prove that Kurlan's program format was both original and novel, the demurrers to the fifth cause of action were improperly sustained. It seems clear to us that, the decision in Kurlan, supra, being final, the only remaining property right left open for settlement negotiation was petitioner's possible creation of an original and novel radio and television program technique and method of presentation of a radio or television program. This record makes no disclosure of such technique or method and we are therefore unable to determine either the originality thereof or the possible similarity between such technique and method used in the radio and television program "My Friend Irma." Petitioner's California suit against CBS was settled before any proofs in that regard were presented. It seems justifiable therefore *70 to conclude that the $75,000 settlement payment here involved was, regardless of the understandably broad and allencompassing language of the settlement agreement, to compensate petitioner, so far as he might be able to prove, for any possible wrongful use by CBS of any property right belonging to petitioner in the technique and method of presentation pertaining to the "My Sister Eileen" radio program. The next question preliminary to final decision relates to the nature of the rights concerning which the settlement was made. If such property rights are similar to "a copyright, a literary, musical, or artistic composition" and they are "held by a taxpayer whose personal efforts created such property," they are, under section 1221(3)(A) of the Internal Revenue Code of 1954, not property which falls within the statutory definition of a capital asset and decision herein would be in favor of respondent on this issue. As has been noted above, we do not have the advantage of petitioner's sample recording of his radio program, but from such evidence as is available we think it reasonable to conclude that the adaptation by petitioner of the plot, characters, and *71 format of the book "My Sister Eileen" was of necessity akin and similar to a literary composition. We think it is very like the creation of a screenplay from the raw material represented by a novel. It seems clear that the technique and method of presentation of the program were part and parcel of such adaptation. This conclusion necessitates a holding, and we so hold, that the $75,000 settlement payment is to be treated as ordinary income. The respondent's determination is therefore upheld on this issue. Having reached the above decision on the primary issue, it follows that attorney fees expended by petitioner to effectuate settlement of his claim against CBS must be given like treatment and are to be deducted under section 212(1) of the 1954 Code. Cf. Otto C. Doering, Jr., 39 T.C. 647, on appeal (C.A. 2, April 8, 1963). Decisions will be entered under Rule 50.