**Charles LEIGH and Marie Leigh, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 83 C 1752.**

United States District Court, N.D. Illinois, E.D.

Feb. 28, 1985.

Diane M. Curtis, Stanton B. Miller, Anderson, McDonnell, Miller & Tabis, Chicago, Ill., for plaintiffs.

Angelynn C. Hall, Dept. of Justice, Tax Div., Washington, D.C., Dan K. Webb, U.S. Atty., James Kubik, Asst. U.S. Atty., Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiffs, Charles and Marie Leigh brought this suit against defendant, the United States, claiming a refund of $3,766 in taxes which the Leighs paid after the Commissioner of the Internal Revenue Service disallowed a $11,009 deduction on taxpayers' federal income tax return for 1978. Plaintiffs allege that under the circumstances, legal expenses incurred in defending a lawsuit concerning a sale of stock were deductible from ordinary income under section 212 of the Internal Revenue Code of 1954, while defendant maintains that they are nondeductible capital expenditures under section 263 of the Code.

Presently before the Court is defendant's motion, pursuant to Fed.R.Civ.P. 56, for summary judgment in their favor on the claims raised in plaintiffs' complaint. For the reasons set forth below, defendant's motion is granted.

*Factual Background*

The material facts are undisputed and largely stipulated. On April 5, 1977, Plaintiff-taxpayer Charles Leigh ("Leigh")[1] and Libco Corporation ("Libco") entered into an installment sale agreement for 116,000 shares of Leigh's stock in Reliable Manufacturing Corporation ("Reliable"). The agreement provided for a down payment on the date of closing, April 12, 1977, the balance to be paid in three installments over the next three years.

Libco paid the initial payment on the closing date. Libco has failed to pay any subsequent installments due under the sale agreement.

On November 22, 1977—approximately two months before the due date of the second installment—Libco filed a lawsuit against Leigh, alleging securities acts violations, common law fraud, and breach of contract. (Case No. 77 C 4386 in the Northern District of Illinois, the "Libco suit".) One year later, on November 15, 1978, Leigh filed a counterclaim for the balance of the payments due under the sale agreement (the "Agreement"). The Libco suit is currently pending in federal court.

On September 22, 1978, Leigh also filed a lawsuit in the Northern District of Illinois (Case No. 78 C 3799), against the fiduciaries of the Reliable Corporation Profit Sharing Plan, alleging mismanagement of the funds held in the profit sharing plan, and requesting an accounting of the plan's funds. The suit against the trustees of the profit sharing plan is also currently pending in federal court.

Leigh retained a litigation specialist, Ware Adams, to handle both of the above-described lawsuits. Leigh's attorneys' fees during 1978 totalled $11,009. 80–85% ($8,807.20–$9,357.65) of this amount is allocable to litigation expenses in the profit sharing plan suit.

The Leighs deducted the entire amount of $11,009 in attorneys' fees on their 1978 joint income tax return. The Internal Revenue Service disallowed the claimed deduction on the ground that the full amount of the attorneys' fees was not a properly deductible item under Section 212 of the Internal Revenue Code of 1954 ("Section 212"), which prescribes the allowable deduction for ordinary and necessary expenses incurred for the production or collection of income. Instead, the Internal Revenue Service maintained that the legal expenses constituted capital expenditures pursuant to Section 263 of the Internal Revenue Code of 1954 ("Section 263"), because they were incurred in the disposition of a capital asset (plaintiff's stock in Reliable).

Plaintiffs paid the additional taxes assessed because of the disallowance of the deduction and filed a claim for refund of the taxes. The refund was disallowed and plaintiffs then filed this civil tax refund action to recover the $3,766 paid by them.

Since the filing of the instant case, the government has conceded the deductibility of the attorneys' fees in the profit sharing plan suit. The instant motion for summary judgment concerns only the issue of the deductibility of the attorneys' fees incurred in defending against the Libco lawsuit.

*Discussion*

Defendant now moves for summary judgment on the ground that the legal expenses incurred by plaintiff in defending against the Libco suit had their origin in the disposition of plaintiff's stock in Reliable. Therefore, the litigation expenses are nondeductible and must instead be categorized as capital expenditures under section 263 which specifically precludes such a deduction.

Plaintiff asserts that the government's motion for summary judgment should be denied because the record discloses a genu-

1. Marie Leigh, wife of Charles Leigh, is a party here only because she and her husband filed joint tax returns. She was not a party to any of the contracts and agreements incident to the relevant sale of stock. References to "plaintiff" or "Leigh" thus refer only to Charles Leigh.

ine issue of material fact[2]: the intent of Libco in filing the lawsuit against Leigh. Plaintiff claims that if Libco sued Leigh to stall or defeat Leigh's collection of the amount owed under the agreement, then the entire Libco suit is essentially a collections suit. If true, plaintiff argues, then the litigation expenses are deductible under Section 212 as expenses incurred in the collection of income. Therefore, under plaintiff's analysis, summary judgment would be premature at best because the facts necessary to support the issue of Libco's intent in filing the suit against Leigh will not be disclosed until the Libco suit is concluded.

Section 212 provides for the deduction of all ordinary and necessary expenses paid or incurred during a taxable year for the production or collection of income, and for the management, conservation, or maintenance of property held for the production of income. The purpose of this section is to extend deductions previously allowed only in a trade or business context (section 165) to certain nonbusiness situations. *See Baier v. Commissioner,* 533 F.2d 117 (3d Cir.1976). However, the restrictions and qualifications applicable to the deductibility of trade or business expenses are also applicable to the expenses covered by section 212. *United States v. Gilmore,* 372 U.S. 39, 45, 83 S.Ct. 623, 627, 9 L.Ed.2d 570 (1963).

The most important limitation to deductions under section 212 for purposes of the instant case is that capital expenditures are nondeductible under section 263. *Woodward v. Commissioner,* 397 U.S. 572, 574, 90 S.Ct. 1302, 1304, 25 L.Ed.2d 577 (1970); *United States v. Hilton Hotels,* 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970); *Clark Oil and Refining Corp. v. United States,* 473 F.2d 1217 (7th Cir.1973). Instead, capital expenditures are added to the basis of the capital asset with respect to which they were incurred, and are taken into account for tax purposes either through depreciation or by reducing the capital gain (or increasing the loss) when the asset is sold. *Woodward,* 397 U.S. at 574–75, 90 S.Ct. at 1304.

Costs which are incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures. *Id.* at 575, 90 S.Ct. at 1304. An example is the payment of a brokerage fee to acquire corporate securities. "The law could hardly be otherwise, for such ancillary expenses incurred in acquiring or disposing of an asset are as much part of the cost of that asset as is the price paid for it." *Woodward,* 397 U.S. at 576, 90 S.Ct. at 1305.

In determining whether litigation expenses are incurred in the acquisition or disposition of capital assets or merely for the production or collection of income, the United States Supreme Court has adopted the "origin of the claim" test. *Woodward v. Commissioner,* 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); *United States v. Hilton Hotels,* 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970). Under the origin of the claim test, the inquiry is whether the litigated claim which generated the legal fees had its origin in the acquisition or disposition of a capital asset. According to the Court, both the consequences of the litigation and the taxpayer's motive or purpose in undertaking the litigation are immaterial.

The Court in *Woodward* thus explicitly rejected the application of a "primary purpose" test in the area of acquiring a capital

2. In order to prevail on a motion for summary judgment, a defendant has the burden of establishing that there is no genuine issue of material fact. *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1984). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Hermes v. Hein,* 742 F.2d 350 (7th Cir.1984). The existence of a factual dispute, however, only precludes summary judgment if the disputed fact is outcome-determinative. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). "'A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth'" *Korf,* 726 F.2d at 1226, quoting *Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1306 (9th Cir.1982).

asset, stating that: "A test based upon the taxpayers 'purposes' in undertaking or defending a particular piece of litigation would encourage resort to formalisms and artificial distinctions." *Woodward,* 397 U.S. at 577, 90 S.Ct. at 1306. The Court labeled the highly subjective primary purpose test as "uncertain" and "difficult," *id.,* and noted that it "hardly [drew] a bright line" and had produced a "melange of decisions" which were irreconcileable. *Id.* at 576, 90 S.Ct. at 1305.

*Libco's Intent*

Leigh argues that the proper characterization of his litigation expenses requires the conclusion of the Libco suit to determine whether Libco's intent in filing suit against Leigh was to block Leigh's collection efforts. The Seventh Circuit specifically rejected this contention in *Dower v. United States,* 668 F.2d 264 (7th Cir. 1981). In *Dower,* the court characterized a similar argument as the very "primary purpose" test the Supreme Court rejected in *Woodward.* The court held that the motive of either litigants is no longer considered a material fact.[3] Libco's intent in filing suit against Leigh in irrelevant. Where the litigation involves the acquisition or disposition of capital assets, *Woodward* clearly mandates that the origin of the claim, rather than the litigants' primary purpose in bringing the claim, controls whether the expenditure should be capitalized.

In the instant case, it is uncontroverted that the shares of stock in Reliable constitute a capital asset. Therefore, our inquiry is whether the Libco suit in which the expenses were incurred had its origin in the disposition of the Reliable stock, or in plaintiff's attempt to collect income owed to him.

*The Legal Expenses Incurred in Defending Libco's Suit*

In *Wagner v. Commissioner,* 78 T.C. 910 (1982), the tax court faced a situation identical to that in the instant case. In *Wagner,* the taxpayer sold stock under an installment sales agreement. Before all of the payments had been completed, the buyer sued the seller-taxpayer for securities fraud. The seller-taxpayer counterclaimed for the remaining portion of the purchase price and then attempted to deduct his litigation expenses incurred in defending the suit under section 212.

The tax court held that the litigation expenses incurred by the taxpayer in defense of this claim had their origin in the taxpayer's allegedly fraudulent representations and concealments when selling the stock. Therefore, the legal expenditures incurred in defending the lawsuit had their

3. In *Dower,* taxpayer Dower had entered into two agreements with certain employees of his corporation (the "Key Men") wherein the Key Men had the right to purchase Dower's stock upon the occurrence of several events. In 1968, after a dispute over the handling of the corporation, the Key Men sued Dower for specific performance of the agreements. The parties reached a settlement in which Dower agreed to pay the Key Men in return for dismissing the suit and their claims under the two agreements. Dower then deducted the payments as ordinary business expenses necessary to preserve his position with the corporation and the value of his stock as an income-producing asset. 668 F.2d at 265. The Internal Revenue Service disallowed the deduction, Dower sued for a refund, the district court granted summary judgment against him, and he appealed. *Id.* at 265–66.

On appeal, he argued that the proper characterization of the settlement payments required a trial to resolve such questions of motive or purpose as whether the Key Men in these lawsuits were really seeking money or stock and whether Dower thought he was fending off a challenge to his management of the corporation or defending his title to the stock. *Id.* at 266. The court characterized Dower's argument as the primary purpose test and stated that this test had been rejected by both the Supreme Court in *Woodward* and this circuit in *Anchor Coupling Co., Inc. v. United States,* 427 F.2d 429 (7th Cir.1970). "Courts now look not to the motives of the litigants but to the origin and character of the claim that was litigated, and in the present case it was possible to determine the origin and character of the claim that Dower settled ... from the state-court pleadings and the terms of the settlement. All of the relevant documents were before the district court on the cross motions for summary judgment and they leave no doubt as to the proper characterization of the settlement payments." *Dower,* 668 F.2d at 266.

origin in the disposition of the stock and were nondeductible capital expenditures.

The Ninth Circuit also has addressed a situation similar to the instant case. In *Locke v. Commissioner,* 568 F.2d 663 (9th Cir.1978), Locke incurred legal expenses defending against a lawsuit based on securities fraud in connection with the purchase of certain stock. The court held that the origin of the claim was the purchase of stock. Because the amended complaint stated "[t]his is an action for damages for fraud in the sale of stock by plaintiffs to defendant John L. Locke," the Ninth Circuit found that the "heart of the complaint was that Locke fraudulently induced Callahan to sell the stock to him, that Locke profited thereby, and that Callahan was entitled to damages." *Id.* at 665. Thus, the legal expenses incurred in defending the lawsuit were nondeductible capital expenditures.

As in *Wagner* and *Locke,* Libco's allegations in the Libco suit concern Leigh's conduct during the disposition of the stock. That is, the heart of Libco's claim in whether or not Leigh made various untrue statements of material facts or failed to disclose other material facts during the negotiations preceding the stock purchase agreement. Libco's claim clearly originated out of the disposition of the sale of a capital asset. Therefore, Leigh's litigation expenses incurred in defending the Libco suit are not deductible.[4]

*Legal Expenses for the Counterclaim*

The expenses incurred by Leigh in counterclaiming for the unpaid balance of the sales price under the Agreement are also capital expenditures because these expenses had their origin in the disposition of a capital asset.[5]

First, as the Supreme Court stated in *United States v. Hilton Hotels,* 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970), the "[d]etermination *and payment of a price* is no less an element of an acquisition by purchase than is the passage of title to the property." *Id.* at 584, 90 S.Ct. at 1309 (emphasis added). The same is no less true for the *disposition* of property since disposition is acquisition from the viewpoint of the other party. In other words, it would be fallacious to distinguish as separate and independent transactions for tax purposes the negotiation of a sale of property and the realization of the proceeds of that sale; they are both part of a single process. *See Helgerson v. United States,* 426 F.2d 1293, 1297 (8th Cir.1970). Therefore, in the case at bar, the payment of the unpaid balance is an essential element of the disposition of a capital asset.

Furthermore, the order in which determination and payment of price and passage of title occur makes no difference in the characterization of the expenses incurred for tax purposes. *Hilton Hotels,* 397 U.S. at 584, 90 S.Ct. at 1309. Thus, the fact that title to the stock passed to Libco before the final installment payment was due does not prohibit the capitalization of Leigh's expenses incurred in the counterclaim.

Second, the origin of Leigh's compulsory counterclaim cannot be viewed in isolation, but rather must be analyzed in the context of all the facts and circumstances. For Leigh to prevail on his counterclaim, he will not only have to prove that the terms of the Agreement are valid, but he also will have to rebut Libco's charges against him.

4. There is no reason why the result should be different simply because the Libco suit was brought by a purchaser rather than a seller as in *Locke.* The origin of a claim is not determined by who brought the suit, but rather by the kind of transaction from which the litigation arose. *See Wagner v. Commissioner,* 78 T.C. 910, 918–19 (1982). Here, the transaction was of a capital nature; therefore, the expenses incurred in the defense of the Libco suit by Leigh were capital expenditures and not deductible.

5. Plaintiff did not claim that an allocation of the legal expenses should be made between expenses incurred in defending the suit and those incurred in counterclaiming for the unpaid balance of the sales price; rather he has claimed that the entire amount deductible. For the sake of completeness, however, this issue shall be addressed.

The Libco claims and Leigh's counterclaims are thus inextricably intertwined. In fact, plaintiff has admitted that "[h]ad Libco failed to bring suit, Leigh ... would have had no need (at least with respect to the second installment) for a collections suit—they could have secured payment by drawing on the irrevocable Letter of Credit held by Continental [Bank]." Plaintiff's Mem. at 16. The disposition of the stock is as much the heart of Leigh's counterclaim as it is the heart of Libco's suit. Thus the expenses of the counterclaim are capital expenditures.

Furthermore, plaintiff has cited only two outdated cases that allowed the deduction of expenses incurred in the collection of payment from the sale of a capital asset: *Naylor v. Commissioner,* 203 F.2d 346 (5th Cir.1953) and *Doering v. C.I.R.,* 39 T.C. 647 (1963). In *Naylor,* the taxpayer granted an option to purchase certain stock which was a capital asset in his hands. The purchaser thereafter exercised the option, but a dispute arose as to the amount due under the sales contract. In resolving the dispute, the taxpayer incurred certain legal expenses which he sought to deduct as nonbusiness expenses incurred in the collection of income. The court found that the taxpayer's attorney was not employed until after an enforceable contract of sale existed, and held that the legal expenses were deductible as expenses incurred for the collection of income.

In *Doering v. Commissioner,* the taxpayer was a shareholder in a corporation that produced motion pictures for distribution. It contracted with another corporation for the latter to distribute and exhibit motion pictures produced by it. A dispute arose between the corporations over the amount that the taxpayer's corporation was to receive under the contract. Before the dispute was settled, the taxpayer's corporation was liquidated and its claim against the other corporation, which had no ascertainable value at that time, was distributed to the shareholders. The claim was ultimately settled, and the taxpayer deducted the legal fees incurred for the collection of income. Relying heavily on *Naylor,* the tax court sustained the taxpayer, finding that since the liquidation was completed when the expenses were incurred, they were incurred for the collection of income. The tax court further stated that whether legal expenses are deductible depends on the *purpose* for which they are incurred.

Plaintiff's reliance on these two cases is misplaced. *Doering* used the primary purpose test that was later rejected by the United States Supreme Court in the *Woodward* and *Hilton Hotels* cases. Significantly, the tax court effectively rejected its earlier holding in *Doering* in *Wagner v. Commissioner,* 78 T.C. 910, 920 (1982).

Further, several courts have noted that *Naylor,* in light of the Supreme Court decisions in *Woodward* and *Hilton Hotels,* has been "considerably eroded." *Estate of Meade v. Commissioner,* 489 F.2d 161 (5th Cir.1974); *Helgerson v. United States,* 426 F.2d 1293 (8th Cir.1970). The *Helgerson* court declined to observe *Naylor.* The soundness of *Naylor* was also questioned by the Ninth Circuit in *Spangler v. Commissioner,* 323 F.2d 913, 920 n. 15 (9th Cir.1963), and has been characterized as "questionable" in 5A Mertens, Law of Federal Income Taxation section 25A.12 n. 40 (rev. ed. 1966).

The Fifth Circuit has since limited its holding in *Naylor* to fact situations where the disposition of a capital asset has been consummated and subsequent controversy concerns *no more than* enforcement of the terms of the agreement. *Estate of Meade,* 489 F.2d at 168. Even this distinction between expenses incident to a disposition of property and those incident to collection of the proceeds of that sale is tenuous, *Helgerson,* 426 F.2d at 1298; *Munn v. United States,* 455 F.2d 1028, 197 Ct.Cl. 233 (1972), and consequently this Court declines to observe it here.[6]

6. The Eighth Circuit came to a similar conclusion in *Helgerson v. United States,* 426 F.2d 1293 (8th Cir.1970). In that case, taxpayers sold certain stock to be paid for in three installments.

In any case, *Naylor* is inapplicable here. First, the Libco suit involves more than enforcement of the terms of the agreement; there is also the question of securities violations, fraud, and breach of contract. Even in Leigh's counterclaim, the primary question is not merely of enforcement but of the *validity* of the contract since Leigh must be able to rebut Libco's claims. Second, *Naylor* did not involve a fact situation where the collection aspect of the suit was inextricably intertwined, and arguably precipitated by, claims of securities violations, fraud and breach of contract.

Therefore, because there is no genuine issue as to any material fact and this Court has found that the defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment is granted.

There was an escrow agreement so that title did not pass until the purchase price was paid in full and a dispute over the escrow agreement arose in the interim. The court in *Helgerson* held that expenses incurred in the litigation concerning the escrow agreement originated in the disposition of the stock because the sale of stock was not fully consummated—the purchaser had not received full ownership of the stock *and* the seller had not received full payment of the purchase price.